[Crim. No. 7958. In Bank. May 21, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN
WILLIAM O'NEIL, Defendant and Appellant.

J. Perry Langford, under appointment by the Supreme Court, Edgar G. Langford and Langford, Langford & Lane for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J. — Defendant appeals from a judgment convicting him of driving while addicted to a narcotic drug in violation of Vehicle Code section 23105. The primary issue in this case turns upon the definition of the term "addicted" in section 23105. Since we find that the trial court erred in its formulation of that term, we must reverse the judgment and remand the cause for a determination of whether the defendant is "addicted" to the use of narcotics as we have defined that term in *People* v. *Victor* (1965) *ante,* pp. 280, 302-305 [42 Cal.Rptr. 199, 398 P.2d 391]; i.e., whether he exhibits the three characteristics of the addiction process: (1) "emotional dependence" on the drug, (2) an increased "tolerance" to its effects, and (3) "physical dependence" manifested by withdrawal symptoms upon sudden termination of drug intake.

Defendant is a disabled war veteran who has frequently been treated in Veterans' Administration hospitals since his discharge in 1944. Defendant also suffers from rheumatoid arthritis; his doctor, in order to reduce his pain, has been legally prescribing tablets which contain a narcotic (dolophine).

On October 16, 1962, defendant drove to his doctor, obtained a prescription, and had the prescription filled. As he was driving home a narcotics officer stopped him and asked where he had been. Responding that he had seen his physician, defendant showed the officer a large vial of pills. When the officer asked to look at defendant's arms, defendant consented; his arms were marked with old and relatively new needle marks. The officer arrested defendant for violating Vehicle Code section 23105.[1]

The officer took defendant to a doctor, who found that he was in the early stages of withdrawal. Defendant related to the doctor that he had been using morphine intravenously for a year and a half and lately had been taking from four to six dolophine tablets a day.

---

[1] The applicable part of Vehicle Code section 23105 reads as follows: "It is unlawful for any person who is addicted to the use, or under the influence, of narcotic drugs or amphetamine or any derivative thereof to drive a vehicle upon any highway. Any person convicted under this section is guilty of a felony. . . ."

At the trial the People stipulated that the narcotics that defendant had been using were obtained legally.[2] Further, defendant testified that on the day of his arrest he had not taken any narcotics since the previous night. The officer admitted that nothing in defendant's handling of the car or in his behavior demonstrated any impairment of faculties. No proof established that defendant was under the influence of narcotic drugs. Indeed, the prosecution did not contend or charge that defendant was under the influence of narcotic drugs or that his driving ability was in any way impaired.

The Legislature has provided that a person who drives a vehicle upon the highway while "under the influence of narcotic drugs" commits a felony (Veh. Code, § 23105). No question arises as to the legality, or statutory purpose, of this prohibition, which obviously serves to protect the motoring public from the potential danger of a person at the wheel who is "under the influence of narcotic drugs." Surely the person whose faculties are impaired because he is under the influence of narcotic drugs should not be permitted to drive a car, and it is immaterial whether he obtains such drugs legally or illegally. In the instant case, however, defendant's conviction rested not upon a showing that he was "under the influence of narcotic drugs" but that he was "addicted to the use of such drugs." We are concerned here only with the meaning of the words "addicted to the use of such drugs."

The trial court followed *People* v. *Kimbley* (1961) 189 Cal. App.2d 300 [11 Cal.Rptr. 519], which held that the term "addicted" in section 23105 did not refer to a person addicted in the sense of loss of the power of self-control, but meant only one who was accustomed or habituated to the use of narcotic drugs. The trial judge, acting as trier of fact, found that defendant violated section 23105 by driving a vehicle while accustomed to or habituated to the use of narcotic drugs and sentenced him to state prison.

We must therefore undertake the familiar task of attempting to ascertain the legislative "intent"; in this case we must determine the Legislature's "intent" as to its use of the term "addicted." As we recently explained, "Little guidance is to be derived, unfortunately, from the various

---

[2]Vehicle Code section 23107 provides: "The fact that any person charged with violation of Section 23105 or 23106 is or has been entitled to use such drugs or amphetamine or any derivative thereof under the laws of this State shall not constitute a defense against any violation of the sections."

statutory definitions of the word 'addict' that have been promulgated over the years (see, e.g., present Pen. Code, § 6407; present and former Welf. & Inst. Code, § 5350; former Health & Saf. Code, §§ 11009 and 11720; Stats. 1927, ch. 89, § 2, p. 150). Their changing content reflects an understandable hesitancy and experimentation on the part of the Legislature in defining what is primarily a medical concept, but it precludes us from distilling any consistent pattern of statutory expression." (*People* v. *Victor* (1965) *ante*, pp. 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].)

We believe the legislative "intent" can best be ascertained by determining the articulated scheme or whole design of the statutes in the light of the considerations that composed the background of the legislation. ▋ Section 23105 is an integral part of an inclusive legislative scheme, as evidenced by Vehicle Code sections 23105-23108, designed to prohibit the use of the highway to classes of persons whose perception, judgment, and reaction time may be adversely affected due to their use of drugs.[3] It is within this broader framework that we must examine the legislative dictate that "any person who is *addicted to the use*, or *under the influence*, of narcotic drugs or amphetamine or any derivative thereof" is guilty of a felony if he operates a motor vehicle. (Italics added.)

▋ The focus of section 23105 is to prohibit the individual who presents a potential danger on the highway from driving a motor vehicle; we must discover, therefore, at what point in the addictive process the individual exhibits characteristics which could operate to impair his driving ability.[4]

---

[3] In addition to Vehicle Code sections 23105 and 23107, referred to in footnotes 1 and 2, the Legislature has enacted the following relevant provisions:

Vehicle Code section 23106 provides: "It is unlawful for any person under the influence of any drug, other than a narcotic or amphetamine or any derivative thereof, to a degree which renders him incapable of safely driving a vehicle, to drive a vehicle upon any highway. Any person convicted under this section is guilty of a misdemeanor. . . ."

Vehicle Code section 23108 provides: "Any person who, while knowingly under the influence of any dangerous drug, other than a narcotic, to a degree which renders him incapable of safely driving a vehicle, drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person other than himself is guilty of a felony. . . ."

[4] We have said, "[N]arcotics addiction is not so much an event as a process. . . . Among the identifiable stages in this process may be listed the following: (1) introduction to and initial experimentation with the drug; (2) 'joy popping' or occasional use to satisfy personal

An individual who has become physically dependent upon the use of narcotics undergoes the *abstinence syndrome* or *withdrawal illness* upon the sudden cessation of drug administration.[5] The usual symptoms of the abstinence syndrome include yawning, lacrimation, sweating, pupillary dilation, abdominal cramps, muscle aches, and hot and cold flashes.[6] When the withdrawal illness reaches its peak, vomiting, diarrhea and fever may result.[7] After this experience the individual continues his drug intake not so much to achieve a sense of euphoria as to avoid the painful withdrawal symptoms. It is also at this stage that the individual, realizing he is physically dependent upon the drug, becomes cognizant of the fact that he is "addicted."[8]

We therefore believe that when an individual has reached the point that his body reacts physically to the termination of drug administration, he has become "addicted" within the meaning and purpose of section 23105. Although physical dependency or the abstinence syndrome is but one of the characteristics of addiction, it is of crucial import in light of the purpose of section 23105 since it renders the individual a potential danger on the highway. In this sense this statute is analogous to Vehicle Code section 12805, subdivision (d), which prohibits the issuance of a driver's license to an epileptic. To deny the privilege of driving to a person who may be subject to the physical infirmities of with-

gratification or social pressures; (3) increasingly frequent use coincident with development of a growing degree of *emotional dependence* on the drug; (4) bodily reaction to such use by development of increasing physical *tolerance*; (5) temporary cessation (whether voluntary or not) of use of the drug, resulting in manifestation of *physical dependence* in the form of withdrawal symptoms; (6) realization by the user of the fact that it was his failure to maintain his intake of the drug that caused the withdrawal distress; (7) continuing use of the drug thereafter for the conscious and primary purpose of forestalling or alleviating withdrawal distress; and (8) concomitant side-effects, such as tendency towards lowering of the user's anxiety threshold so that normal (non-addict) instances of nervousness or discomfort become misinterpreted as signs of an impending withdrawal experience and hence increase even further the user's recourse to and dependence on the drug." (*People* v. *Victor* (1965) *ante*, pp. 280, 301-302 [42 Cal.Rptr. 199, 398 P.2d 391].) (Italics added.)

[5]Proceedings, White House Conference on Narcotic and Drug Abuse (1962) p. 278.

[6]*Id.* at p. 280.

[7]*Ibid.*

[8]Clausen, *Social and Psychological Factors in Narcotics Addiction* (1957) 22 Law & Contemp. Prob., 34, 48.

drawal or epilepsy clearly falls within the legitimate confines of the state's police power.[9]

The prosecution need not prove that the individual was actually in a state of withdrawal while driving the vehicle. The prosecution's burden is to show (1) that the defendant has become "emotionally dependent" on the drug in the sense that he experiences a compulsive need to continue its use, (2) that he has developed a "tolerance" to its effects and hence requires larger and more potent doses, and (3) that he has become "physically dependent" so as to suffer withdrawal symptoms if he is deprived of his dosage.[10]

Most authorities agree that a person who exhibits the above three characteristics constitutes an "addict"; the People argue, however, that the scope of section 23105 need not be so limited. The People contend that one who "habitually uses" narcotics may be classified as an "addict" for the purposes of section 23105. As we have noted, the "habitual use" definition derives from *People* v. *Kimbley* (1961) 189 Cal. App.2d 300 [11 Cal.Rptr. 519], a case which involved the

[9]For this reason the proscription found in section 23105 does not fall under the holding of *Robinson* v. *California* (1962) 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed.2d 758], which declared unconstitutional that portion of Health and Safety Code, section 11721, which made criminal the status of narcotic addiction. The criminal offense proscribed by section 23105 is the driving of a vehicle, not the condition of addiction. The Legislature's decision to punish as a felon the individual who drives a vehicle while "under the influence" of a narcotic drug is also clearly reasonable; such an individual represents a potentially serious hazard to public safety. Medical authority supports the view that a person under the influence of a narcotic drug lacks the full measure of his capabilities; the presence of the drug within his system increases his reaction time, diminishes his perception, and clouds his judgment. While various drugs produce differing effects, the physical manifestations which may be exhibited by persons while under the influence of the more common narcotics are as follows: opiates, morphine, and morphine-like analgesics and barbiturates characteristically induce a somnolent state. (Proceedings, White House Conference on Narcotic and Drug Abuse (1962) pp. 279-285.) Marijuana commonly results in a distortion of the individual's perception of time and space. (*Id.* at p. 286.) Reports indicate that amphetamines often give rise to hallucinations. (*Id.* at p. 287.)

[10]As we stated in *People* v. *Victor, supra,* "It should be emphasized that the foregoing definition is over-inclusive with respect to certain addictive drugs of the 'stimulant' class: e.g., although a form of tolerance may be developed to amphetamines, physical dependence, as such, is not thought to be acquired through abuse of such drugs and there may be no specific abstinence syndrome upon withdrawal; and abuse of cocaine is generally held to result neither in tolerance nor in physical dependence. (Proceedings, White House Conference on Narcotic and Drug Abuse (1962) pp. 285-290.) Accordingly, addiction to such drugs— which can be as severe as opiate addiction—should be defined in terms of emotional or psychological dependence only." (*People* v. *Victor* (1965) *ante,* pp. 280, 304, fn. 17 [42 Cal.Rptr. 199, 398 P.2d 391].)

illegal use of narcotics resulting in a conviction for driving while addicted. Rejecting defendant's contention that the statute failed because of unconstitutional vagueness in not defining the term "addicted," the court held that its ordinary meaning clothed the word with sufficient certainty to satisfy the standards of due process. By reference to Webster's Dictionary, the court then determined that an addict is a person accustomed or habituated to the use of narcotics. (*Id.* at p. 307.)

The lay "habitual use" definition, which the court in *Kimbley* gleaned from Webster's Dictionary, will not, however, suffice for our present purposes. We shall point out why that definition would tend to confuse the application of other statutes involving narcotic addicts, would substitute an inexact lay definition for a more specific medical formulation and would engender a harsh application of the involved section.

Penal Code sections 6399-6555 establish a program of civil commitment for "narcotic addicts" as well as those "in imminent danger" of becoming addicts. To equate "habitual use" with "addiction" would mean that a person could be committed under that program if he were deemed to be "in imminent danger" of using drugs habitually. "Not only would such a construction verge on redundancy, it would also revive the spectre of unconstitutional vagueness. . . ." (*People* v. *Victor* (1965) *ante,* pp. 280, 301 [42 Cal.Rptr. 199, 398 P.2d 391].)

Although "addiction" may have become associated with "habitual use" in common parlance, medical authorities recognize a distinction between drug *addiction* and drug *habituation.* In its contrasting definitions of these two terms the Expert Committee on Addiction-Producing Drugs of the World Health Organization describes drug *habituation* as "a condition resulting from the repeated consumption of a drug. Its characteristics include: (1) A desire (but not a compulsion) to continue taking the drug for the sense of improved well-being which it engenders; (2) Little or no tendency to increase the dose; (3) Some degree of psychic dependence on the effect of the drug, but absence of physical dependence and hence of an abstinence syndrome [withdrawal symptoms]; (4) Detrimental effects, if any, primarily on the individual." (Proceedings, White House Conference on Narcotic and Drug Abuse (1962) p. 289.) Recalling that it is principally the presence of the abstinence syndrome or

withdrawal symptoms which renders an addict a danger to the public safety on the highway, and recognizing that this element is absent from drug habituation, we cannot equate the latter condition with the addiction for the purpose of section 23105.[11]

Finally, to conclude that the statute covered the ''habitual user,'' despite the absence of those terms, would be to give it a wide and doubtful sweep. Although Vehicle Code section 23105 does not itself define ''narcotic,'' Health and Safety Code section 11001 does so; it includes within its ambit certain cough medicines and paregoric. Vehicle Code section 23105 specifically mentions amphetamine; this drug and its derivatives are commonly found in weight-reducing compounds and in preparations for colds, sinusitis, and hay fever. We doubt that the Legislature designed that a person who lawfully used such drugs and drove a vehicle should be punished as a felon unless he were under the influence of, or so physically or emotionally dependent on, the drug as to be a potential driving hazard.

Because of the importance of the use of the motor vehicle and the large number of unsuspecting persons involved, we believe that our interpretation accords with the legislative design. As so construed, the statute would still apply to all persons who could conceivably endanger others on the highway because of the use of narcotics. ▮ To interpret the term ''addicted'' in light of the effect upon the individual's ability to operate a motor vehicle with safety expresses the legislative purpose underlying section 23105 to ''assure the safety of persons using the public highways. . . .'' (*People* v. *Kimbley, supra,* at p. 306.) ▮ As the court in *Kimbley* recognized, the Legislature ''had in mind the pernicious consequences which follow *abuse* of narcotic drugs. . . .'' (*Id.* at p. 307; italics added.) ▮ Mere habitual or customary use which falls short of physical or emotional dependence would not necessarily constitute such an ''abuse of narcotic drugs.'' To the extent to which *People* v. *Kimbley* (1961) 189 Cal. App.2d 300 [11 Cal.Rptr. 519], and *People* v. *Berner* (1938) 28 Cal.App.2d 392 [82 P.2d 617], are inconsistent with the views expressed herein, they are disapproved.

---

[11]Evidence of the Legislature's awareness of the distinction between an ''addict'' and an ''habitual user'' may be found in section 11425 of the Health and Safety Code which requires a physician prescribing a narcotic to an ''habitual user'' to report such to the state division. The statute also provides that the doctor shall include in his report a statement as to whether the ''habitual user'' is, in his opinion, an ''addict.''

Since the trial judge, acting as the trier of fact, utilized the improper "habitual use" test in finding defendant to be "addicted to the use of narcotics," we must reverse the judgment and remand the cause for a factual determination of whether the defendant is an "addict" as we have defined that term. Defendant is entitled to the opportunity for a full presentation of his defense in the light of that definition.

The judgment is reversed with directions to proceed in accordance with the views expressed in this opinion.

Traynor, C. J., Peters, J., Peek, J., Schauer, J.,* and Dooling, J.,* concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Griffin in the opinion prepared by him for the District Court of Appeal in *People* v. *O'Neil* (Cal.App.) 37 Cal.Rptr. 734.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.