[Crim. No. 10865. Second Dist., Div. Two. Apr. 13, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. HECTOR RAUL CANO, Defendant and Appellant.

Mitchell W. Egers, under appointment by the District Court of Appeal, and Hanson & Egers for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was found guilty of possession of narcotics in violation of section 11500 of the Health and Safety Code. Trial was to the court. Three prior felony convictions alleged in the information were found to be true.

A search of appellant's person at the time of his arrest yielded two rubber condoms containing heroin in his right front sweater pocket. Appellant contends here as he did at the trial, there was no probable cause to arrest him and to search his person.

Sergeant Dennis Cook, a veteran narcotics investigator for the Los Angeles County Sheriff's Department, having been informed from a reliable source, that one Vidal Aguilar was engaged in selling narcotics, investigated and found that Aguilar had a substantial narcotics history. He placed Aguilar under surveillance and discovered that the suspect would leave his home or work almost daily and visit a residence on Sidney Street in East Los Angeles. Aguilar resided elsewhere. The Sidney Street residence was unoccupied. Aguilar, however, paid for the utilities. Cook testified that in his experience in the narcotics field, sellers of narcotics would often use a site separate from their residence or work to cache their narcotics.

On October 12, 1964, at approximately 4 p.m., Cook followed Aguilar to the Sidney Street residence. When Aguilar left, he drove north on Sidney Street to Eagle Street, made a left turn and parked on the north side of Eagle Street, east of Eastern Avenue. After a few minutes wait, Aguilar turned the car around and parked on the south side of Eagle Street. Aguilar continued to change the position of his car every few minutes. Finally, Aguilar made contact with a man recognized by Cook as Frank Ortiz, a known narcotics user. Cook had seen Ortiz make a contact with Aguilar on the previous day. Ortiz approached Aguilar's car, leaned on the driver's side, then left after a few seconds. Thereupon, Aguilar left the location.

Cook testified that narcotics peddlers who arrive early at a rendezvous, will often move around in order to avoid police observation, particularly in the daytime.

The following day, October 13, 1964, at approximately 4 p.m., Cook again followed Aguilar. Aguilar stopped at the Sidney Street residence and remained for approximately 20 minutes. Aguilar then drove north on Sidney Street, turned left, and parked east of Eastern Avenue. Cook circled the block, and as he turned onto Eagle Street, he noticed Aguilar walking to a Studebaker occupied by appellant and parked directly across the street from Aguilar's automobile. Aguilar placed his elbows on the open window of the car and leaned forward into the car. Aguilar immediately departed. Appellant drove away.

Cook followed appellant through rush hour traffic. Concurrently, Cook was in radio contact with another sheriff's vehicle containing Sergeant Landry and Deputies Stoops and Weldon.

During the course of a lane change, made to escape a stalled vehicle, appellant turned to view the traffic behind him. At this time, Cook was directly behind appellant at a distance of approximately 15 feet. Lighting conditions were good. Cook testified that he could see appellant's eyes but was unable to see his pupils. He therefore suspected that appellant was under the influence of narcotics.

In radio communication with the other sheriff's vehicle, Cook informed Landry and the deputies in the other vehicle of his belief that Aguilar had made a delivery of narcotics to appellant who might be under the influence of narcotics and advised them to continue to follow appellant and ". . . arrest him if he stopped his vehicle." Deputy Stoops, one of the officers in the second car, testified that they followed appellant and noticed his vehicle ". . . swerving from one lane across the line to the other lane several times, and about seventy-five feet before the defendant stopped his vehicle it was continuously on the wrong side of the street."

We need not speculate on whether this stopping after such erratic operation of the vehicle resulted from appellant's physical condition (cf. Veh. Code, § 23105; *People* v. *O'Neil,* 62 Cal.2d 748, 753-756 [44 Cal.Rptr. 320, 401 P.2d 928]), or from his awareness of the possibility he was being followed by the police, or from some other cause. Combined with all the other suspicious actions that had preceded it, this significant

conduct justified the deputies in the conclusion that appellant should be arrested and searched.

Deputy Stoops then testified: ". . . As we pulled up beside the driver's side of his vehicle, the defendant started to open the door, and I opened my door, and as I did so, I was in the front passenger seat, I opened the door, and my partner pulled the car up a little too close, when I opened my door, it closed the defendant's door. I then opened, or I then slid out and through a very small opening of our door, and at that time the defendant was just sitting there looking at me. The window was down, and I reached through the window, first told him he was under arrest, not to move, and grabbed ahold of his hands, at that time my partner moved the vehicle so that I could get the defendant's door open, and I, before letting loose of his hands, I told him not to move, and as quickly as I could, let loose of him, opened the door and told him to step out of the vehicle.

"Q. Then what happened?

"A. I took ahold of his hands by the wrists, and I escorted him around to the rear of his vehicle to the passenger side of his vehicle onto the curb, and I then told him to put both his hands on top of the vehicle, and I made a search of his person at that time.

"Q. What did you find, if anything?

"A. I found two rubber condoms containing white powder in his right front sweater pocket."[1]

The fact that persons using or dealing in narcotics are frequently dangerous, considered together with the information Deputy Stoops had received from Sergeant Cook and the uncontradicted testimony of Deputy Stoops that appellant was swerving over the middle lane of the street to the wrong side of the street and continuing on the wrong side until he stopped just prior to his arrest, was, in our opinion, sufficient probable cause for Deputy Stoops to make the arrest and search as herein detailed. (*People* v. *Ingle*, 53 Cal.2d 407, 412-

---

[1]The record shows that appellant told his probation officer that in fact he was under the influence at the time, having taken an injection of heroin shortly before his apprehension. While such fact was not before the court during the trial, it does serve to weaken appellant's arguments concerning the possibility of the officer's observations and conclusions. It also serves to illustrate the care that must be exercised by the courts, trial and appellate, before they reject the conclusional impression gained by an experienced officer from particularized perceptions so meaningful at the scene but so difficult to verbalize in the courtroom. (Cf. *People* v. *Cowman*, 223 Cal.App.2d 109, 117-118 [35 Cal.Rptr. 528].)

414 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *McGlory,* 226 Cal.App.2d 762, 765 [38 Cal.Rptr. 373].)

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 8, 1966.