[Crim. No. 12032.   Second Dist., Div. Two.   Aug. 8, 1967.]

In re Frederick M. Nicholas on Behalf of GEORGE GILBERT FAUCETTE on Habeas Corpus.

Thomas C. Lynch, Attorney General, William E. James, Doris H. Maier, Assistant Attorneys General, and Anthony M. Summers, Deputy Attorney General, for Appellant.

Frederick M. Nicholas, A. L. Wirin, Fred Okrand and Laurence R. Sperber for Respondent.

HERNDON, J.—On December 14, 1965, a petition for a writ of habeas corpus was filed in the court below on behalf of George Gilbert Faucette, hereinafter referred to as "peti-. tioner." This petition alleges that petitioner is "a parolee under the jurisdiction of the Department of Corrections of the State of California . . ." and that he "is being illegally held in custody, confinement and restraint by the Department of Corrections of the State of California, and that the illegality thereof consists in this, to wit:

"Petitioner, who is now residing at Synanon House in Santa Monica, California, has been ordered by the Department of Corrections to remove himself and his possessions therefrom or suffer the revocation of his parole and that he is thereby being deprived of rights to which he is entitled under the Constitution and laws of the State of California and of the United States. . . ."

Said petition concludes with a prayer for relief including the following: "(1) That a Writ of Habeas Corpus directed to Walter Dunbar, Director of the Department of Corrections of the State of California, issue for the purpose of inquiring into the cause of the restraint and delivering the said George Gilbert Faucette therefrom.

"(2) That an Order to Show Cause why the relief prayed for should not be granted and a Temporary Restraining Order be issued pending the hearing and determination of said Order to Show Cause, restraining Walter Dunbar, his officers, agents, employees, representatives and all persons acting in concert or participating with him, from engaging in or performing, directly or indirectly, any or all of the following acts: (A) Imposing as a condition of the parole of George Gilbert Faucette that he refrain from residing at Synanon House in Santa Monica, California. (B) Revoking the parole

of George Gilbert Faucette or harassing or otherwise taking reprisals against him as a result of his residence at Synanon House in Santa Monica, California.''

After a reasonably extended hearing, the trial court entered an order which declares ''that the Petitioner is entitled to full consideration of his application to the Adult Authority[1] to remain at Synanon House and that pending a full determination by the Adult Authority as to the appropriateness of the petitioner's request, his continued residence there should not alone be a ground for revocation of his parole.''

Walter Dunbar, in his capacity as Director of the Department of Corrections, has appealed from this order and in his brief states his contentions as follows: '' (1) Habeas corpus does not lie to review an order of the Department of Corrections directed to a parolee when no action is taken to suspend, cancel, or revoke parole;'' and '' (2) It is not an abuse of discretion for the Department of Corrections to refuse to permit petitioner to reside at Synanon.''

Preliminarily, we hold that petitioner is mistaken in his contention that this order is not appealable. Section 1506 of the Penal Code provides that an appeal may be taken by the People ''from a final order of a superior court made upon the return of a writ of habeas corpus discharging a defendant or otherwise granting all or any part of the relief sought. . . .'' By the present order the trial court granted petitioner's prayer that the Adult Authority be required to give consideration to his request for permission to continue his residence at Synanon. Also to the extent that the order restrains future action by the Adult Authority, it grants a part of the relief sought and partakes of the nature of a preliminary injunction.

The evidence bearing upon the issues of law herein presented is essentially uncontradicted. For some 15 years petitioner, who was 53 years old at the time of the hearing in the trial court, has been afflicted with a serious problem of narcotic addiction. Since 1954, he has been in and out of prison serving a two to twenty-year sentence for possession of narcotics. His presently effective release on parole is his fifth.

---

[1]Throughout the proceedings references are made alternately to the ''Adult Authority'' and to the ''Department of Corrections.'' As the Attorney General has pointed out, the Adult Authority is a subsidiary agency of the Department of Corrections established by the Legislature as a specialized body to determine such questions as the controls which should be placed upon parolees. (Cf. *People* v. *Morse*, 60 Cal.2d 631, 642-646 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].)

He has been returned to prison after short periods outside its walls following each of four prior releases by reason of his inability to control his narcotic habit.

Apparently fearing another relapse and having met other persons who had found help for their similar problems through residence at the facilities operated by Synanon Foundation, Inc.[2] in Santa Monica, California, petitioner sought admittance and was accepted therein on December 7, 1965. On the same day he notified his parole officer, E. L. Arnold, of this change of residence. On December 13, 1965, petitioner received a post card from Parole Officer Arnold requesting that he report to his parole office the following day together with his clothing and personal belongings.

Indicating that he had not yet returned again to the use of narcotics, petitioner filed his pending petition for relief contending, in effect, that since narcotic addiction is an "illness" (cf. *People* v. *Robinson,* 370 U.S. 660, 666-667 [8 L.Ed.2d 758, 762-763, 82 S.Ct. 1417]; *People* v. *Victor,* 62 Cal.2d 280, 301-304 [42 Cal.Rptr. 199, 398 P.2d 391]; *People* v. *O'Neil,* 62 Cal.2d 748, 754 [44 Cal.Rptr. 320, 401 P.2d 928]; *People* v. *Sullivan,* 234 Cal.App.2d 562, 568-569 [44 Cal.Rptr. 524]; Welf. & Inst. Code, § 3000), one suffering from such an "illness," even if he be a parolee whose rights and privileges are concededly most limited, should not be summarily prevented from seeking assistance in a chosen facility without, at least, some reasonable precedent investigation and consideration of such facility by the Adult Authority.

Petitioner does not challenge the general rule that a parolee has no right to choose his own residence. (Cf. *People* v. *Denne,* 141 Cal.App.2d 499, 507 et seq. [297 P.2d 451].) He concedes that one of the conditions of his parole, to which he agreed prior to release from confinement, is that his choice of residences would be subject to approval by his parole officer. He contends only that in view of the unusual nature of his basic problem, i.e., an "illness" which in his case had progressed to such a stage that it is generally regarded as "incurable" and terminal, his efforts to achieve rehabilitation, the success of which he regards as dependent upon his continued residence at the designated facility, should not be frustrated without requiring the controlling

---

[2]References to materials describing Synanon Foundation, Inc., its activities and methodology are set forth in the appendix hereto.

authority to give reasonable consideration to the merit of his choice before taking negative action.

Further, petitioner acknowledges that the discretion granted by the Legislature to the Adult Authority, a special administrative agency, necessarily is extremely broad and should not be the subject of judicial interference absent the most clear and convincing showing that such discretion has been abused. However, petitioner contends that appellant's summary rejection of his attempt to help himself did not amount to an abuse of discretion but, in practical terms, constituted a complete failure to exercise any discretion in the premises. After considering the evidence presented, the trial court concurred with this contention stating in its Opinion and Order:

"The Court recognizes that the Adult Authority has vast discretionary powers, and we think that the Attorney General correctly states the law when he urges that the Court cannot substitute its discretion for the discretion of the Adult Authority. . . .

"If the Court had found that after careful consideration of the elements suggested for consideration in the *Denne* case [*supra*, 141 Cal.App.2d 499], the Adult Authority concluded the petitioner and society would be better helped in a hotel room rather than Synanon House. this Court would not impose his judgment over that of the authority's in such determination. The evidence, however, indicates no substantial consideration was given to the validity of petitioner's request to reside at Synanon House."

Contrary to appellant's basic premise on this appeal, the trial court did not conclude that it would be an abuse of discretion for the Adult Authority to deny petitioner's request to reside at, and receive help from, the facilities operated by Synanon Foundation, Inc. upon any of the several potential bases for such denial suggested in appellant's brief. This is true because appellant's position at trial was that *it had not denied petitioner's request to reside at Synanon and had established no policy either permitting or disapproving such residence for parolees.*

█ Appellant, of course, is correct in his observation that where an administrative body is granted the power to control certain activities, that body ordinarily must be given the opportunity to act before judicial intervention is sought. This doctrine is commonly known as "exhaustion of administrative remedies." It is well established that exhaustion of adminis-

trative remedies is a jurisdictional prerequisite to resort to court action. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715] et seq.) Until the administrative body has acted, there is nothing for the court to review. (*Western Surgical Supply Co.* v. *Affleck*, 110 Cal. App.2d 388, 391 [242 P.2d 929].)

On the other hand, where, as here, an administrative body has declined to exercise its discretion or has demonstrated by its actions that it intends to act without proper consideration of the subject matter, habeas corpus is an appropriate method of seeking declaratory and injunctive relief. (*In re Gonsalves*, 48 Cal.2d 638, 642 [311 P.2d 483]; *In re Bramble*, 31 Cal.2d 43, 53-54 [187 P.2d 411]; *In re Marzec*, 25 Cal.2d 794, 797 [154 P.2d 873].)

Pehaps the most anomalous aspect of the instant proceeding is that the desires expressed by both appellant and petitioner appear to be entirely consistent with the order made by the trial court. Appellant contended that the trial court should not usurp the right of his agency to grant or deny petitioner's request to reside at Synanon until appellant had had an opportunity to act thereon. Petitioner agreed with this contention but urged that appellant should not be permitted to reject his request automatically and arbitrarily without first giving it consideration on its merits. The following order made by the trial court would appear to satisfy both parties.

"The Court concludes that the order to move, without giving reasonable consideration to petitioner's request to remain at Synanon House, since it is a matter which may materially affect the petitioner's health and safety, is arbitrary and oppressive, and relief should be granted. The Petition for Writ of Habeas Corpus will, therefore, be granted. The Court declares that the Petitioner *is entitled to full consideration of his application* to the Adult Authority to remain at Synanon House and that *pending a full determination by the Adult Authority* as to the appropriateness of the petitioner's request, his continued residence there should not alone be a ground for revocation of his parole." (Italics added.)

We find nothing in this order inconsistent with appellant's contention that the Adult Authority should be permitted to make an investigation and a determination of appellant's request before its decision is subjected to judicial review. On the contrary, the court's order does no more than require the authority to do that which it asserts it wishes to do but which

the evidence clearly demonstrated it had to that date refused to do. The following observations made by the trial court in its Opinion and Order find ample support in the record:

"The respondent, Adult Authority, has not favored the Court with any evidence indicating that it has considered the use of Synanon facilities in its overall program for rehabilitation of addicts on parole. The Court is, frankly, unable to understand the lack of interest in such a proven technique for rehabilitation of addicts. One of the great problems recognized by all law enforcement agencies is the tendency of persons once addicted to the use of drugs to relapse into such use. The relapse of a parolee constitutes, in effect, a failure on the part of the parole program and it appears to the Court that an agency vested with such authority, discretion and responsibility as the Adult Authority, should in the sound exercise of its discretion, carefully consider the facilities of such an institution as Synanon House as an effective adjunct to the parole program. The consequence of failure in any instance of the parole program, represents a serious loss to the public and a serious threat to the health and welfare of the parolee so involved."

In his brief filed herein appellant asserts that it should not be deemed an abuse of discretion for the authority to refuse to allow petitioner to reside in the facilities operated by Synanon Foundation, Inc., if after full consideration of the question it determines that despite the alternative checks provided by Synanon residence it should not forego its customary requirement that parolees be subjected to nalline or other tests to determine whether or not they have reverted to the use of narcotics. This may well be true, but there is nothing in the trial court's order that is in conflict therewith. The point made by the trial court is that to date no such determination has been made. To quote further from the trial court's Opinion and Order:

"Prior to the determination by parole officer Arnold that the petitioner should move from Synanon House to a hotel room east of Sepulveda Boulevard, the Department of Corrections had not made any evaluation of either the physical facilities of Synanon House, nor had they approved or disapproved Synanon House as a place of residence for parolees. Neither parole officer Arnold, nor any other representative of the Department of Corrections had ever visited Synanon House. No one from the Department of Corrections had made any first-hand inspection of the living facilities, nor

had they made any examination of the program and procedures conducted at Synanon House. Between July of 1959 and July of 1961, at least one former addict parolee under the jurisdiction of the Department of Corrections was permitted to reside at Synanon House without objections. The testimony of parole officer Arnold and a supervisor of the Department of Corrections indicate that prior to giving Mr. Faucette notice to move no serious consideration was given, if indeed any at all by the Department, as to the suitability of Synanon House for parolees. Likewise, the evidence indicates the Department has no present policy at all with reference thereto. . . .

''Considerable testimony was offered relating to the usefulness, as compared to the dangers, in connection with the use of nalline tests. The uncontroverted testimony adduced at the hearing, indicated that Synanon House discourages the use of nalline tests which are conducted for the purpose of determining if the person tested has been a recent user of certain types of narcotics.

''The Adult Authority normally prescribes that parolees take nalline tests. Testimony adduced by a representative of the Adult Authority indicates that under certain circumstances nalline tests are waived by the Adult Authority and that the waiver of such tests is discretionary with the Adult Authority. While it has been argued that the use of the nalline test, or non-use, is a determinative factor in this case, the Court does not agree with this contention.

''If after full consideration of the advantages, as compared to possible disadvantages, the Adult Authority would conclude that Synanon House is a desirable place for a former drug addict, and would provide for him a reasonable opportunity to receive supportive help, such as is available at Synanon House, the Adult Authority might well, in its sound discretion, find that sufficient other safeguards and methods of drug addiction detection are available and present at Synanon House to warrant their granting a waiver of the nalline test for such resident during the period of his residence thereto.''

The other possible grounds suggested by appellant as potential bases for refusing to allow petitioner to receive assistance at the Synanon facilities need not be passed upon at this time. For example, if after full investigation and consideration the Adult Authority should refuse to permit parolees to reside at the Synanon facilities because of an inability to work out a cooperative agreement with the officers thereof, or, assuming

that the Synanon House falls within the purview of Health and Safety Code, section 11391, that it fails to meet the requirements thereof, or because its buildings are not approved by the appropriate fire marshal's or other health and safety inspectors, or because of the "controversial" nature of its theory of therapy and rehabilitation, it may order petitioner to remove therefrom without in any fashion violating the present order of the trial court.

It appears from the undisputed evidence in the present record, however, that no such investigation had been made and consideration had been given to these matters at the time of the hearing below.

In conclusion, we believe that the trial court quite properly refused to pass upon the hypothetical questions as to what the court's attitude should be if, after considering petitioner's request, appellant might ultimately determine to reject it. It was sufficient for the purposes of the present proceeding to require that such consideration be given.

The order under review is affirmed.

Roth, P. J., and Fleming, J., concurred.

### Appendix

Synanon Foundation, Inc. is a private non-profit corporation operated largely by former addicts that seeks to assist narcotic users who desire to achieve freedom from addiction. Following an investigation by the California Assembly Interim Committee on Criminal Procedure, the following Findings and Recommendations were printed in the Assembly Interim Committee Reports, 1961-1963, Volume 22, No. 3, p. 73:

#### "Findings

"The existence of Synanon serves several useful purposes:

"1. It is keeping approximately 100 former addicts off of narcotics. This feat in itself benefits not only the persons directly involved but also the community at large by preventing crimes committed to finance addiction.

"2. It saves the taxpayers a sizeable amount of money which they should otherwise have to spend to keep these people in jails or state hospitals.

"3. It provides a valuable educational service by sending speakers to any requesting school, church, club or other facility.

"4. It provides an unparalleled opportunity for research on every aspect of narcotics addiction. These possibilities are not being adequately exploited at the present time.

"5. There is no known 'cure' for narcotics addiction. An essential part of addiction is the tendency to relapse and return to the use of narcotics. Judged in comparison to other narcotic treatment programs Synanon appears to be a most promising effort to rehabilitate narcotic addicts.

#### "Recommendations

"1. Recognizing that there are many approaches but no proven formulae for addict rehabilitation, we recommend that the State of Cali-

fornia take a friendly but nondirective interest in Synanon and any other private attempts to rehabilitate narcotic addicts.

"2. We recommend that one of the publicly supported universities in Southern California co-ordinate a research program to study the causes of addiction and to appraise the various rehabilitation efforts, both public and private, being made throughout the United States.

"3. It is hoped that such a study might enable California to develop effective methods to prevent addiction."

Persons on parole or probation granted by federal authorities and by the States of Nevada, Oregon, New Jersey, Minnesota, Missouri, Connecticut, Ohio, Massachusetts, New York, Florida and Illinois are residing at Synanon facilities. At the time of the instant hearing 18 residents at Synanon were on probation from the California state courts. Prior to 1961, California parolees were permitted to reside at Synanon but apparently this practice was halted by reason of charges of zoning violations brought against the organization by the City of Santa Monica. At the time of the instant action evidence was introduced that these actions involving zoning disputes were "off calendar."

Published analyses of the Synanon operations include:

Daniel Casriel, M.D.—Book—So FAIR A HOUSE: The Story of Synanon—Prentice-Hall, Inc., 1963.

Lewis Yablonsky—Book—Synanon: The Tunnel Back—The Macmillan Company, 1965.

Lewis Yablonsky—Article—"The Anticriminal Society: Synanon"—FEDERAL PROBATION, Vol. XXVI, No. 3, September, 1962.

Rediffusion, Ltd.—London—Film—"A House on the Beach," 1965.

Walker Winslow—Article—"Synanon—An Application of the Reality Principle"—THE MUNICIPAL COURT REVIEW, Fall Issue, 1964.

Elliott L. Markoff, M.D.—Study—"The Dynamics of Synanon"—April, 1964.

Marshall S. Cherkas, M.D.—Article—"A Radical Approach to the Problem of Addiction"—SCIENTIFIC PROCEEDINGS, 1964.

Rita Volkman & Donald R. Cressey—Article—"Differential Association and the Rehabilitation of Drug Addicts"—THE AMERICAN JOURNAL OF SOCIOLOGY, Vol. LXIX, No. 2, September, 1963.

Gertrude Samuels—Article—"Where Junkies Learn to Hang Tough"—NEW YORK TIMES, May, 1965.

TIME MAGAZINE—Article—Vol. LXXVII, No. 15, April 7, 1961.

TIME MAGAZINE—Article—"Synanon House, Reno, Nevada"—Vol. LXXXI, No. 9, March 1, 1963.

LIFE—Article—"A Tunnel Back Into the Human Race"—March 9, 1962.

WALL STREET JOURNAL—Article—October, 1965.

John R. Fry—Article—"Aid for the Addicted"—PRESBYTERIAN LIFE, July 15, 1963.