HUFSTEDLER, J.
 

 Duncan was charged by information with driving an automobile while under the influence of narcotic drugs and while addicted to the use of narcotics, in violation of section 23105 of the Vehicle Code and with a prior conviction of robbery. Duncan pleaded not guilty and denied the prior felony. Duncan was initially represented by the public defender, but private counsel was subsequently substituted.
 

 Duncan and his counsel waived trial by jury and stipulated with the prosecuting attorney to submit the cause on the transcript of the preliminary hearing. No evidence in addition to that contained in the transcript of the preliminary hearing was submitted. Duncan was found guilty, the prior was found true, probation was denied and Duncan was sen
 
 *73
 
 tenced to 270 days’ imprisonment in the comity jail. Duncan has appealed from the conviction.
 

 On appeal Duncan contends (1) the evidence was insufficient to prove his addiction and (2) the court erred in admitting over objection opinion testimony of a police officer that Duncan was addicted and that Duncan was suffering from withdrawal sickness at the time the officer examined him.
 

 Summary of the Evidence
 

 In the early evening of September 22, 1965, Officer Pearcy of the Los Angeles Police Department observed Duncan driving an automobile on the Golden State Freeway. The officer noticed that the windshield of the Duncan car was shattered in the center, which in the opinion of the officer obstructed the driver’s vision. The officer stopped Duncan and asked him for his driver’s license. Duncan said he did not have his license with him and was unable to produce any identification. Officer Pearcy arrested Duncan. At the time of the arrest Officer Pearcy observed that Duncan’s nose was running and that he was constantly wiping it. He was noticeably perspiring, although the temperature was not unusually hot or cold. The officer noticed two or three needle marks or sears on the inside of each of Duncan’s arms.
 

 Duncan was examined by Officer Salagi at about 9 a.m. on September 23 at the central jail. Duncan had scabs over the vein areas of both arms—12 scabs on the right arm and 21 on the left arm. Two of the scabs on the left and four on the right were enlarged. Duncan was breathing heavily and irregularly. He was restless and fidgety. His nose was running. Duncan put his hand to his stomach from time to time. Although the room was at normal temperature and Duncan was fully clothed, Salagi noticed intermittent gooseflesh over Duncan’s body.
 

 Salagi tested Duncan’s eyes for light accommodation. At first there was a fair reaction, the pupils contracting, but when the light remained in the eyes, Duncan’s pupils “pulsated back. ’ ’
 

 Sergeant Salagi had been on the police force for almost 20 years, during which his principal work was with narcotics addicts. He had examined approximately two to three thousand addicts during his police career. He had numerous conversations with addicts about their narcotics habits and had many conversations with doctors about narcotics addicts. He had in-service training, explaining the symptoms of narcotics addicts. He had also read books about addicts. Sergeant Sal
 
 *74
 
 agi, however, had no medical degree and his formal medical training was limited to a first aid course and instruction in elementary psychology.
 

 Over objection by Duncan’s counsel, Sergeant Salagi was permitted to give his opinion that Duncan was addicted to narcotics and that he was going through withdrawal sickness at the time Salagi examined him. Sergeant Salagi further testified that in his opinion Duncan was physically and emotionally dependent upon narcotics and had built up a tolerance to the drug he was taking.
 

 Sufficiency of the Evidence
 

 Duncan contends that the evidence was insufficient to sustain the prosecution’s burden in proving addiction as that burden has been defined in
 
 People
 
 v.
 
 O’Neil
 
 (1965) 62 Cal.2d 748, 754 [44 Cal.Rptr. 320, 401 P.2d 928], wherein the court said, “The prosecution need not prove that the individual was actually in a state of withdrawal while driving the vehicle. The prosecution’s burden is to show (1) that the defendant has become ‘emotionally dependent' on the drug in the sense that he experiences a compulsive need to continue its use, (2) that he has developed a ‘tolerance’ to its effects and hence requires larger and more potent doses, and (3) that he has become ‘physically dependent’ so as to suffer withdrawal symptoms if he is deprived of his dosage. ’ ’
 

 The court in the
 
 O’Neil
 
 case defined the term “addicted’’ as used in section 23105 of the Vehicle Code as that state in which “an individual has reached the point that his body reacts physically to the termination of drug administration. ’ ’ (62 Cal.2d at p. 753.) The court recognized in the
 
 O’Neil
 
 case and in the case of
 
 People
 
 v.
 
 Victor
 
 (1965) 62 Cal.2d 280, 304 [42 Cal.Rptr. 199, 398 P.2d 391], that addiction is “more a process than an event.’’ The court’s reference to emotional dependence and tolerance is a description of stages in the process which ultimately result in addiction. If the person who has been taking drugs has reached the stage of suffering withdrawal sickness when drugs are discontinued, he has already passed the points of emotional dependence and tolerance. The withdrawal sickness is the unmistakable signal that the user is addicted.
 

 Thus, if withdrawal sickness is established, it is unnecessary independently to prove that the defendant is also emotionally dependent on the drug and has developed tolerance' for it. If on the other hand the question of addiction is to be determined in a case in which the defendant has not
 
 *75
 
 been seen exhibiting- withdrawal symptoms, the People must establish not only that he would exhibit such symptoms if he were deprived of his dosage, but also that he is emotionally dependent on the drug and that he has developed a tolerance to it.
 

 “The usual symptoms of the abstinence syndrome include yawning, lacrimation, sweating, pupillary dilation, abdominal cramps, muscle aches, and hot and cold flashes. When the withdrawal illness reaches its peak, vomiting, diarrhea and fever may result.”
 
 People
 
 v.
 
 O’Neil, supra,
 
 62 Cal.2d at 753. The symptomatology observed and reported by Sergeant Salagi is sufficient to support the conclusion that Duncan was undergoing withdrawal sickness when Sergeant Salagi examined him.
 

 No Error in Admitting Opinion Testimony
 

 Duncan argues that Sergeant Salagi did not qualify as an expert witness competent to express an opinion upon the ultimate issue of addiction. The question whether a witness is qualified to testify as an expert is a matter within the sound discretion of the trial court, and its determination will not be disturbed on appeal in the absence of abuse of discretion.
 
 (People
 
 v.
 
 Smith
 
 (1967) 253 Cal.App.2d 711, 718 [61 Cal.Rptr. 557];
 
 People
 
 v.
 
 Gurrola
 
 (1963) 218 Cal.App.2d 349, 353 [32 Cal.Rptr. 368].) The court did not abuse its discretion in concluding that Sergeant Salagi liad acquired sufficient special knowledge through his experience and training to identify withdrawal symptoms and to express an opinion of addiction based upon those symptoms. The question of the degree of Sergeant Salagi’s knowledge goes only to the weight of his testimony and not to its admissibility.
 
 (People
 
 v.
 
 Smith, supra,
 
 253 Cal.App.2d at p. 718;
 
 People
 
 v.
 
 Johnson
 
 (1957) 153 Cal.App.2d 564, 567-568 [314 P.2d 751].)
 

 The judgment is affirmed.
 

 ICaus, P.J., and Stephens, J., concurred.