[Crim. No. 13099.   Second Dist., Div. Three.   Nov. 30, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD W. GARCIA, Defendant and Appellant.

Ronald W. Garcia, in pro. per., and Roger S. Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Plaintiff and Respondent.

COBEY, J.—This is an appeal from an order of involuntary commitment to the California Rehabilitation Center made upon a jury verdict that appellant was a narcotic drug addict. These civil commitment proceedings were initiated pursuant to Welfare and Institutions Code, section 3050, after appellant's conviction on July 26, 1966, of a violation of Health and Safety Code, section 11721—a misdemeanor— illegal use or being under the influence of narcotics. The appeal lies. (Code Civ. Proc., § 963, subd. (1); *In re De La O,* 59 Cal.2d 128, 156 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705], cert. den. 374 U.S. 856 [10 L.Ed.2d 1076, 83 S.Ct. 1927].)

Appellant seeks reversal of the commitment order upon the following grounds: (1) federal constitutional error in the admission of appellant's extrajudicial incriminating statements, (2) improper procedure in that the jury's verdict of addiction was not unanimous, (3) irregularities in procedure in that the required certificate of the two medical examiners was inaccurate, (4) insufficiency of the evidence which at most proved habitual use rather than addiction.[1]

The pertinent facts are as follows. On May 25, 1966, appellant was released from jail after having been there 13½ months. About 4 a.m. on Saturday, July 23, 1966, he was arrested for violation of the just mentioned Health and Safety Code, section 11721, a misdemeanor. According to the arresting officer's report he was then under the influence of narcotics and his right inner elbow area bore visible puncture wounds in a heavy dark section of a tattoo. Apparently upon his arrest appellant was taken into custody and remained in custody thereafter.

Frank E. Sweeney, a qualified narcotic expert and a sergeant on the Vernon police force, interviewed appellant in the detective bureau's office of that force, and examined his right arm about 1:30 p.m. on either July 23, 1966, or July 25, 1966. At that time Sweeney advised appellant as to his consti-

---

[1]Appellant also attacks the procedure and sufficiency of the evidence taken at the first hearing in this matter before the trial judge alone, but that is not before us on this appeal. This is because the commitment order under appeal followed and was based exclusively upon the subsequent jury verdict of addiction rather than upon the earlier hearing before the trial judge alone.

tutional rights as follows: his right to an attorney, his right to remain mute, the fact that he could have an attorney present during the conversation and the fact that an attorney could "probably" be obtained for this purpose through the public defender's office "if necessitated." Then Sweeney asked appellant how much heroin he was using. Appellant replied, "A few drops now and then." Sweeney asked him when he had last used heroin and appellant replied "approximately 10 days prior." Sweeney inquired how this occurred and appellant said a "dude" came by his house, they shared the drug and appellant "just got a couple of drops." Sweeney next inquired of appellant how often he used heroin and appellant's response was "I'm just a weekend user." Sweeney apparently closed the interview by asking appellant "Is this smack (meaning heroin) any good on the street?" and appellant replied "It's very weak nowadays."

Sweeney examined appellant's arms with his naked eyes and a five-power microscope. With the aid of the latter he found three freshly scabbed-over[2] puncture wounds in the already described right inner elbow area where the two veins form a "Y." One of these wounds appeared to be in previous scar tissue from an earlier puncture. These three puncture wounds seemed to be from one to fourteen days old and, in the sergeant's professional opinion, had been caused by a specified type of hypodermic needle carrying an injection of an opiate derivative.

At the time of this interview and examination appellant's eyes were severely dilated with very little reaction to light and appellant was sniffling—a symptom of the abstinence syndrome or withdrawal illness. None of the other symptoms of such illness were, however, observed.

On August 10, 1966, and again on August 22, 1966,[3] as a part of the commitment proceedings under review, appellant was examined by two medical examiners appointed by the court, Thomas L. Gore, M.D., and John R. Peters, M.D. Doctors Gore and Peters were both psychiatrists and qualified narcotic experts. The August 10th examinations apparently each took from 10 to 15 minutes and consisted of an examination of appellant's veins in the right inner elbow area, a

[2]According to the sergeant, it takes from 8 to 14 hours for a scab of this sort to form.

[3]The August 22d examination appears to have been nothing more than a check of appellant's hardened and infiltrated veins in his right inner elbow area. Their condition was found to be unchanged.

reading of the arresting officer's report and some questioning of appellant.

The two medical examiners both observed in the course of their physical examinations of appellant's right arm that the tattoo above the two veins in appellant's right inner elbow area was moth-eaten in appearance due to fadings where the vein had been repeatedly invaded. These veins, which both doctors palpated, were found to be distinct, hardened and infiltrated.[4] Since appellant admitted to both doctors that he had started using heroin in 1960 (though he denied recent or current use), both of them concluded that the condition of his veins had been caused exclusively by heavy and recent injections of heroin into these veins during the approximately two-month period between his release from jail and his arrest. They also concluded that such intensive and heavy use of heroin over such a short period of time, following a 13½ month period of forced abstinence indicated emotional and physical dependence by appellant upon the narcotic and a tolerance for it. They based this last-mentioned conclusion also upon his admission to each of them that his largest dosage of the drug had been "one cap."[5]

The foregoing facts were established at a jury trial upon the issue of addiction, at which the only witnesses were the two medical examiners, Sergeant Sweeney and appellant.

■ As suggested at the outset of this opinion, appellant first seeks reversal of the commitment order on the ground that evidence was received against him at the commitment hearing in violation of the requirements of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. More specifically in this connection he referred to the fact that at the outset of his interrogation by the investigating officer, Sergeant Sweeney, he was not warned

---

[4]According to Dr. Gore this condition is caused by the introduction of opiates into the vein in strong solution which irritates the vein's walls and thereby causes a clot to form. Inflamation follows in the area of the clot and this section of the vein then becomes hard and infiltrated. Recurrent extraction of blood from the vein will not result in this condition because the irritation is caused by the injection of the opiate rather than by the puncture wound of the needle. Furthermore, an infection following an injection of an innocuous substance creates an abscess formation as well.

[5]There is nothing in the record indicating how large a dosage one cap per day of heroin is but apparently it is over a gram of heroin. Both doctors agreed that at the time of their August 10th examination of appellant he did not exhibit any withdrawal symptoms, a circumstance which both attributed to the lapse of time between his arrest and their examination of him.

that anything said by him could and would be used against him in court. (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 469 [16 L.Ed.2d at pp. 720-721]) and also to the further fact that Sweeney's testimony regarding the warnings given him was not corroborated. (*Miranda, supra,* 384 U.S. at p. 475 [16 L.Ed.2d at p. 724].) While the previously stated warnings of Sweeney appear to be defective in the first particular just mentioned[6] such defect is without legal significance, notwithstanding the otherwise timely application of *Miranda* (*People* v. *Rollins,* 65 Cal.2d 681, 686, 691 [56 Cal.Rptr. 293, 423 P.2d 221]), because no objection or motion to strike his testimony on this basis was made in the trial court. (Cf. *People* v. *Palmer,* 236 Cal.App.2d 645, 650 [46 Cal.Rptr. 449].) Since this is a commitment proceeding which has been held to be essentially civil in nature, (*In re De La O, supra,* 59 Cal.2d 128, 149-150, 152, cert. den., 374 U.S. 856 [10 L.Ed.2d 1076, 83 S.Ct. 1927]) the applicability of *Miranda* is as yet an unresolved question which we do not here decide. (Compare *In re Gault,* 387 U.S. 1, 27 [18 L.Ed.2d 527, 546, 87 S.Ct. 1428], with *People* v. *Whelcher,* 255 Cal.App.2d 455, 460-462 [63 Cal.Rptr. 258].)

■ Appellant next challenges the validity of the commitment proceedings under review because the jury's verdict of addiction was not a unanimous verdict but was instead an 11 to 1 verdict. But since, as has just been stated, the proceeding under review is a special civil proceeding, a unanimous verdict was not required. (See *In re De La O, supra;* Cal. Const., art. I, § 7.)

■ Appellant's next objection is to the irregularities of the certificate of the two medical examiners. Welfare and Institutions Code, section 3050, requires that these commitment proceedings be conducted in substantial compliance with four specified sections of that code, including section 5566[7] which sets forth the requisite form of the medical certificate. This medical certificate is found in the clerk's transcript together with the commitment order which recites that "It is

---

[6]We do not pass upon appellant's claim that *Miranda* requires that the People's testimony as to the warnings given be corroborated. Further, appellant does not contend that *Miranda* applies to his interrogation by the two court-appointed medical examiners. For the difficulties that might arise if such were the case, see *In re Spencer,* 63 Cal.2d 400, 409, 411-412 [46 Cal.Rptr. 753, 406 P.2d 33].

[7]The actual code reference was to section 5055 but that section was repealed by present code section 5566 (Stats. 1965, ch, 391, § 3, p. 1630, § 4, pp. 1662-1663), which is essentially identical. The basic section 3050 has now been rewritten. See Stats. 1967, ch. 1124, § 3, pp. 2786-2787.

stipulated that the certificate of the medical examiners may be received in evidence." However, the reporter's transcript of the subsequent jury trial does not indicate that this certificate was either identified or offered in evidence at the jury trial and therefore any irregularities in its date and time of preparation and any possible inaccuracies in its formal statements[8] are immaterial because quite evidently the jury never saw the certificate.

Appellant's final ground for reversal of the commitment order is that the record establishes no more than his habitual use of heroin and is insufficient for the verdict of addiction. In support of this position appellant points to the line drawn between the habitual user of heroin and the addict,[9] and to the statement in *People* v. *O'Neil,* 62 Cal.2d 748 at p. 754 [44 Cal.Rptr. 320, 401 P.2d 928], that in order to prove addiction the People must show: (1) his emotional dependence on the drug (2) his tolerance to it and (3) his physical dependence on it.

There is in this record no detailed evidence of emotional dependence nor of tolerance in the sense of resort to increased dosages of the drug. Furthermore, with the exception of one symptom of sniffling, there is likewise no direct evidence of physical dependence or of withdrawal illness—"the unmistakable signal" of addiction. (See *People* v. *Duncan,* 255 Cal.App.2d 75, 78 [62 Cal.Rptr. 822].)

Indeed the record resembles that of *People* v. *Bruce,* 64 Cal.2d 55, 63 [48 Cal.Rptr. 719, 409 P.2d 943], in that the conclusion of addiction on the part of the two medical examiners was based to a large degree upon their brief examination of the physical condition of the two veins in the inner elbow area of appellant's right arm.

---

[8]The two medical examiners evidently prepared and filed their certificate with the court before the jury trial and the later date appearing on their certificate is obviously an altered one. Furthermore there is nothing in the record to indicate that each of them actually heard the other three witnesses at the jury trial as the certificate expressly attests or that their examination of appellant was joint which the certificate also states.

[9]The difference between the habitual user and the addict of heroin has been stated essentially in the following terms: The addict constantly takes the drug to avoid the pain of withdrawal illness; the habitual user takes it in anticipation of the euphoria it creates for him. The one is compelled by fear to use the drug constantly, while the other is induced to such constant use by the prospect of pleasure. (See *People* v. *O'Neil,* 62 Cal.2d 748, 753, 755 [44 Cal.Rptr. 320, 401 P.2d 928]; *People* v. *Victor,* 62 Cal.2d 280, 302 [42 Cal.Rptr. 199, 398 P.2d 391].) By "habitual user" we are not referring only to those who are in imminent danger of becoming addicted.

But, according again to *Bruce* at pages 64 to 65, evidence of appellant having experienced a withdrawal illness immediately prior to his arrest or subsequent thereto is not essential to a finding of heroin addiction[10] provided there is other evidence sufficient to show repeated use of the drug and emotional *or* physical dependence upon it.[11] Nothing is there said about the necessity of proof as well of tolerance to the drug and in this connection it is well to remember, as pointed out in *People* v. *Duncan, supra,* at page 78, that emotional dependence and tolerance were originally defined in *People* v. *Victor,* 62 Cal.2d 280, 301-302 [42 Cal.Rptr. 199, 398 P.2d 391], as being merely earlier parts of the multiple stage development of the process of addiction.

Here, the repeated use of heroin by appellant over the approximately two-month period between his release from jail and his arrest is clearly established, and, in our opinion, the two medical examiners were justified in inferring that such intensive use of the drug over such a short period of time after some 13½ months of enforced abstinence from it indicated quite conclusively appellant's emotional *or* physical dependence upon the drug.

The order is affirmed.

Ford, P. J., and Moss, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1968.

---

[10]Similarly, in *O'Neil* at page 754, the court said that to prove the offense of driving while addicted, "The prosecution need not prove that the individual was actually in a state of withdrawal while driving the vehicle." Many addicts do not suffer severe and therefore readily observable withdrawal symptoms upon abrupt discontinuance of the use of heroin because of the frequently highly diluted nature of the drug when illegally purchased. (Frankel, *Narcotic Addiction, Criminal Responsibility and Civil Commitment* (1966) Utah.L.Rev. 581, 583; Murray, *Psychology and the Drug Addict* (1966) 12 Catholic Law. 98, 106.)

[11]We have shortened the statement of the substitute evidence required. *Bruce* actually states: ". . . repeated use of heroin to the extent that the person has failed to solve his problems by socially accepted methods and that he is emotionally or physically dependent upon narcotics and is, therefore, in the opinion of qualified examiners either addicted thereto or in imminent danger of becoming so addicted."