[L. A. No. 28605.   In Bank.   Jan. 31, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. LENNY BRUCE, Defendant and Appellant.

Irmas & Rutter and S. M. Irmas, Jr., for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

BURKE, J.—Upon conviction of defendant Lenny Bruce of possession of heroin criminal proceedings were suspended, and on June 4, 1963, the court ordered the sheriff to file a petition pursuant to former section 6451 of the Penal Code[1] in order to ascertain whether defendant ''is addicted to the use of narcotic drugs or by reason of repeated use of narcotics is in imminent danger of becoming so addicted.'' A petition was filed and a lengthy hearing was held commencing on June 12, 1963, at which defendant was represented by counsel. At the conclusion of the hearing the trial court determined that defendant was a narcotic addict and committed him to the custody of the Director of Corrections for placement in the narcotic addicts rehabilitation program.

---

[1]These provisions of the code were repealed by Stats. 1965, ch. 1226, and reenacted and amended as division 3 (commencing with § 3000) of the Welfare and Institutions Code (by chs. 1226 and 1227 of Stats. 1965) relating to the commitment, treatment and rehabilitation of narcotic addicts.

Defendant appeals from the order of commitment and contends that the evidence is not sufficient to establish his addiction, particularly as that term is defined in the recent cases of this court. In addition, defendant advances a number of contentions directed to procedural steps in his commitment which will first be discussed.

A review of the proceedings indicates that such procedural defects as occurred were either brought about by stipulations of counsel that the particular steps might be dispensed with, or were the necessary result of such stipulations. The record indicates that the hearing took several days, the transcript thereof covering some 400 pages, and demonstrates that the trial judge was painstaking in his efforts to accord defendant a full and complete hearing despite the fact that the particular hearing was the summary proceeding provided for in the law and not the trial de novo to which one is entitled, if he so desires, following an order of commitment.[2]

Under the provisions of former section 6451 of the Penal Code (now Welf. & Inst. Code, § 3051), a hearing and examination are required to be held to determine if the person is either a narcotic addict or is in imminent danger of becoming addicted to narcotics, and such proceedings are required to be conducted in substantial compliance with certain sections of the Welfare and Institutions Code dealing with the examination and commitment of mentally ill persons.

These sections (former 5053, 5054, 5055)[3] specify that the court may order the clerk to issue subpoenas and compel the attendance of witnesses at such hearing. They provide that the

---

[2]At the time of this particular proceeding there was no specific requirement that a person committed under former section 6451 is entitled to a trial de novo should he demand it. However, in the preceding section, now 3050, of the Welfare and Institutions Code, and its predecessor section, 6450, dealing with persons convicted of crime in the municipal or justice court, a person convicted thereunder is given the right to demand such a hearing. In *In re Trummer*, 60 Cal.2d 658, 664 [36 Cal.Rptr. 281, 388 P.2d 177], where a defendant, as here, was convicted of a crime in the superior court and subsequently was committed as an addict, this court determined that it would be a violation of the equal protection clause to deny a hearing to such person but accord it to those convicted in the municipal or justice court. Subsequent to the trial of the *Trummer* case, and prior to its ultimate review in the Supreme Court, the Legislature did amend the law to specifically provide for such a right and to eliminate the discriminatory feature. Thus, in the case at bench the ruling in *Trummer* is read into the law.

[3]Former sections 5053, 5054, and 5055 are referred to by section 3051 (Stats. 1965, ch. 1226, § 2) but were repealed by Statutes 1965, chapter 391, section 3. The same or similar provisions contained in former sections 5053, 5054, and 5055 now appear in section 5564, 5565, and 5566 (Stats. 1965, ch. 391, § 5).

judge shall compel the attendance of *at least* two medical examiners "who shall hear the testimony of all witnesses," make a personal examination of the patient and testify before the judge as to the result of the examination, and to any other pertinent facts within their knowledge. The judge is also required to cause to be examined before him as a witness any other person who he has any reason to believe has any knowledge of the mental condition of the patient. The sections require the patient to be present at the hearing, and contain provisions for the appointment of counsel.

These sections also prescribe the form of certificate to be made and signed by the medical examiners certifying to attendance at the hearing, the conducting of an examination of the patient and the results of such examination. In the statutory form of the certificate the doctor is required to state the "pertinent case history," the general physical condition, present mental status, the results of laboratory reports (if any), the doctors' tentative diagnosis of mental health, the recommendation for disposition or supervision, treatment and care, and the reasons for the recommendation.

The medical examiners and courts have had to adapt these applicable sections to the handling of cases involving alleged narcotic addicts, or those persons in imminent danger of becoming addicted to narcotics.

In the vast majority of cases dealing with mentally ill persons, as well as with narcotic addicts, such petitions are unopposed, and the proceedings tend to be summary in nature. For this reason the Legislature has afforded a person who is committed under such sections the right to demand a trial de novo by jury or judge on the issue as to whether or not he should be committed. (Welf. & Inst. Code, §§ 3050, 3051, 3108.) Any such hearings are required to be held in substantial compliance with the provisions of section 5125 of the Welfare and Institutions Code.[4]

In this case defendant has not demanded a trial de novo and, therefore, it may be deemed waived. He does, however, attack the validity of the order of commitment upon several grounds. He asserts that the court erred in appointing two additional medical witnesses after it ap-

___

[4]Section 5125, although referred to by sections 3050, 3051, and 3108 (Stats. 1965, ch. 1226, § 2), was repealed by Statutes 1965, chapter 391, section 3. The provisions of former section 5125 are now contained in section 5572.

peared that there was a disagreement between the first two physicians appointed by the court to examine defendant. One of the physicians first appointed indicated to the court that additional evidence was required before he could arrive at a diagnosis. The second indicated that he had concluded from his physical examination of the defendant that he was a narcotic addict. In view of this disagreement the court correctly followed the procedure often taken in similar situations involving allegedly mentally ill persons, the appointment of one or more additional doctors to examine the person. Here the court appointed two medical examiners long experienced in examining persons claimed to be addicted to narcotics. They examined the defendant and subsequently gave their testimony in court. This was entirely proper since the applicable statute requires the court to appoint *at least* two medical examiners.   (Welf. & Inst. Code, former § 5053.)

Both pairs of examiners duly filed their certificates with the court. Defendant complains, however, that the certificate of the first two doctors was incomplete and did not substantiate the order of commitment and that the court referred to this particular certificate in its order of commitment. This is factually correct; however, the clerk's transcript indicates that the certificates of all four medical examiners appointed by the court were in fact filed as a part of the proceedings on June 20, 1963, and, undoubtedly, the reference in the formal order signed by the judge only to the certificate of the first two doctors was a clerical error which is subject to correction by a *nunc pro tunc* order. At the conclusion of the hearing, following argument, the court indicated that it was relying upon the testimony of three of the four doctors appointed by the court that the defendant ''is a narcotic drug addict at this time and that he is in need of rehabilitation treatment.''

The defendant charges that the medical witnesses should not have been permitted to review the report of the probation officer which was in the file, asserting that such report includes hearsay evidence and that the effect was to deny the defendant a fair trial. This objection has no merit because it ignores the nature of these proceedings. The law clearly contemplates that the medical examiners shall have the benefit of all relevant information to better enable them to make their diagnoses, and, as pointed out, the form of the certificate required of the doctors specifically includes ''pertinent case history.'' In the case of a mentally ill person such

case history is usually compiled by a psychiatric social worker, probation officer or investigator, and is afforded to both the court and the medical examiners for their information. In the case of an alleged narcotic addict, or one in imminent danger of becoming addicted to narcotic drugs, the report of the probation officer, likewise, can be very helpful in giving the doctors and the court the history and background of the individual insofar as its bears on the question of his use of narcotics.

It is also significant that the law requires, with respect to the determination of the question of narcotic addiction, as well as that of mental illness, that the medical examiners be present in the courtroom and listen to the testimony of all witnesses to assist them in arriving at their diagnoses.

We conclude therefore that there are no valid questions of procedure under which the order of commitment may be successfully attacked in this case, and that under such circumstances the normal procedure would be to affirm the order and to advise the defendant that as to the question of insufficiency of the evidence, as pointed out in *In re Trummer, supra,* 60 Cal.2d 658, 665, the remedy of a person who believes he has been illegally committed under the provisions of the narcotic addiction statutes is to demand trial by jury or by the court "on the issue of his narcotic addiction *at the time of his commitment.*" (Italics added.)

▮ Here, at the summary hearing defendant's counsel laid great emphasis upon the fact that none of the tests conducted by any of the eight doctors who testified were positive, i.e., showed the presence of narcotics in the defendant's system when examined or indicated that he was then undergoing or had at any time undergone the withdrawal symptoms which are indicative of addiction. However, such tests made on or about the time of commitment are not compelling proof of non-addiction. In *People* v. *Victor,* 62 Cal.2d 280, 302, 304 [42 Cal.Rptr. 199, 398 P.2d 391], the court recognized that "addiction is more a process than an event" and that although no single definition of "addiction" may be satisfactory for all purposes there is general agreement that abuse of an addictive depressant drug, such as heroin, "will tend to produce in the user the three characteristic mental and physical responses of the addiction process: i.e., emotional dependence, tolerance, and physical dependence."

An addict who has been in custody for a period of weeks or months, and who has not had access to narcotics for that

period, may be nonetheless a narcotic addict within the meaning of the narcotic laws even though an examination at the time of commitment may show no signs of the withdrawal illness which occurs upon abrupt termination of drug administration. ■ Likewise, laboratory tests, such as by the administration of Nalline, or urinalysis, may be entirely negative and are not of compelling significance.

Similarly, a person who is permitted to remain on bail pending criminal proceedings against him may be able to abstain from narcotics for a limited period of time under the compulsion of being under surveillance or under threat of confinement and yet be properly classified as an addicted person, or one in imminent danger of becoming addicted to narcotics, if his "pertinent case history" shows repeated use of narcotics to the extent that he has failed to resolve his problems by socially accepted methods, that he is emotionally or physically dependent upon their use, and that he has therefore become addicted or that a total addiction is just a matter of time. "When that stage is reached, the state has the right and duty to intervene for the protection of the individual in question and of society at large." (*People* v. *Victor, supra,* 62 Cal.2d 280, 305.)

■ Normally, as indicated above, a defendant who feels that he has been improperly committed for lack of evidence of his addiction should seek the remedy provided for in the statute, namely, to demand a trial de novo by jury or by court. However, in this case, in view of the extensive hearing accorded the defendant and the great amount of medical testimony (eight doctors, four for the state and four for defendant, were called and testified), justice would not be served by returning the case for a further trial unless that appeared necessary.

■ With this in mind the court has reviewed the evidence and has reached the conclusion that it is legally insufficient to substantiate an order of commitment and that therefore no purpose would be served in ordering a further hearing. It should be noted that the hearing before the trial court in this matter was conducted prior to and without the benefit of a number of decisions of this court in which rules have been laid down governing the determination of addiction. (*People* v. *O'Neil,* 62 Cal.2d 748 [44 Cal.Rptr. 320, 401 P.2d 928]; *People* v. *Victor, supra,* 62 Cal.2d 280; *In re Trummer, supra,* 60 Cal.2d 658; *In re Raner,* 59 Cal.2d 635 [30 Cal.Rptr. 814, 381 P.2d 638].)

From the point of view of the state, the medical evidence adduced indicated that there were found on the defendant's hands and arms linear discolorations which were similar to tracks which are made on persons who use narcotics. There were numerous marks which were bluish or brownish and widened over a portion of the veins. The latter hardened when palpated. It was almost entirely upon the nature of these marks that three of the state's four medical examiners concluded the defendant was a narcotic addict. A summary of the testimony of these doctors indicates that although their knowledge that the defendant had been convicted of the possession of heroin and had associated with known narcotic users may have had some slight bearing upon the question, their conclusions that he was an addict were based almost entirely upon their physical examination of his arms.

The defendant's personal physician stated that he had given his patient prescriptions for the extensive use of Methedrine, a drug which stimulates the central nervous system, to overcome a lethargic condition of which defendant complained which made it difficult for him to stay awake and to perform in his vocation as a nightclub entertainer. Because the oral administering of Methedrine had proved ineffective, this doctor advised defendant to inject the drug intravenously which he had been doing for a considerable period of time. He stated that in his opinion defendant was not an addict and was not in imminent danger of becoming addicted.

One of the doctors called by the defense testified that he could not "state conclusively" that the defendant was a narcotic addict. He gave his opinion that he was not in imminent danger of addiction, however, and stated that the injection of a nonnarcotic substance could produce conditions similar to those produced by an injection of a narcotic, and in the absence of other information he could not distinguish between the two types of marks which such injections could make on defendant's arms. A defense doctor who had examined defendant and given him a series of Nalline tests gave his opinion that he was not an addict.

Dr. Joel Fort, who volunteered his services to assist the defendant and who is an acknowledged expert in this field, likewise testified that in his opinion defendant was not an addict nor was he in imminent danger of becoming one, and further stated that one cannot distinguish between a dis-

coloration or mark caused by the intravenous injection of heroin and one caused by the intravenous injection of a non-narcotic substance such as Methedrine. He stated that self-administered injections of narcotics usually produce abscesses but he found none on the defendant's arms. He found no physical evidence that defendant had ever taken a narcotic, nor evidence of mental or emotional disorder to indicate he was dependent upon narcotics.

The defendant's personal physician testified that in the four years he had treated him he never noticed in defendant any evidence of narcotic use or any withdrawal symptoms; that defendant had been hospitalized in 1961 and had been given between 600 and 1,000 injections of antibiotics and other medicines.

The record indicates a direct conflict in the medical testimony with respect to whether or not a doctor can distinguish, solely by the examination of a person's arms, whether an injection or series of injections was the result of the self-administration of a narcotic drug or of a nonnarcotic substance, such as Methedrine. Although in the normal situation the court would deem itself bound by the resolution of this conflict as made by the trial judge, under the circumstances of this case the evidence of addiction is otherwise insufficient to support the order of commitment. Aside from any inference which may arise from the conviction of defendant of the possession of heroin, the evidence of his association with drug addicts and the medical opinions based upon examination of the marks upon his arms, there is no evidence indicating that prior to the arrest of the defendant in the criminal case he engaged in any use of heroin, much less of any repeated use of narcotics; that he was emotionally or physically dependent upon narcotics prior to or at or about the time of his arrest on the criminal charge; that he had ever experienced the abstinence syndrome (withdrawal illness). ▮▮▮ Although evidence of having experienced the abstinence syndrome immediately prior to arrest or commitment, or subsequently thereto, constitutes one of the proofs of addiction (*People* v. *Victor, supra,* 62 Cal.2d 280), it is not essential to a finding, for purposes of commitment pursuant to section 6451 of the Penal Code, that a person is either an addict or in imminent danger of becoming addicted if other evidence is sufficient to show repeated use of heroin to the extent that the person has failed to solve his problems by socially accepted methods and that he is emotionally or physically dependent upon nar-

cotics and is, therefore, in the opinion of qualified examiners either addicted thereto or in imminent danger of becoming so addicted. ▮▮▮ Under the circumstances of this case the record is insufficient to support the conclusion of the three medical examiners or the committing court that at the time of defendant's arrest on the criminal charge or of his commitment to the rehabilitation center he was either addicted or in imminent danger of becoming addicted to narcotic drugs.

For these reasons the order of commitment of defendant as a narcotic addict is reversed and the defendant is ordered returned to the department of the superior court, which directed the filing of the petition, for such further proceedings on the criminal charges as the judge of such department deems warranted.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and White, J.,* concurred.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.