[Crim. No. 3523.   Fourth Dist., Div. One.   May 13, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. WADE T. ELMORE, Defendant and Appellant.

Barton C. Sheela and Howard J. Bechefsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward Duddy, Deputy Attorney General, for Plaintiff and Respondent.

AULT, J. pro tem.*—Appellant Wade T. Elmore was convicted in the Justice Court of the Brawley Judicial District of violation of Penal Code section 415 (disturbing the peace). Upon conviction the court suspended the criminal proceedings pursuant to Welfare and Institutions Code section 3050, and ordered the district attorney to file a petition in the Superior Court of Imperial County to ascertain whether Elmore was addicted to the use of narcotic drugs or by reason of repeated use of narcotic drugs was in imminent danger of becoming so addicted. Such petition was filed, medical examiners were appointed, a hearing was had, and the court found Elmore "is a drug addict or in imminent danger of becoming such."

Appellant demanded a jury trial pursuant to Welfare and Institutions Code section 3108. A jury trial was held on July 29, 1968, and the jury by its verdict found appellant was in imminent danger of becoming a narcotic drug addict. Appellant, his counsel and the district attorney stipulated the cause could be consolidated with another case in which appellant had been certified for narcotic addiction proceedings by the superior court.[1] The court ordered defendant committed to the Norco Rehabilitation Center for treatment, hospitalization and care.

Appellant appeals from the order of commitment. ▮▮▮ His sole contention on appeal is the evidence presented at his

---

*Assigned by the Chairman of the Judicial Council.

[1] The record before us does not reveal the nature of the criminal charge in the superior court which resulted in this second certification.

jury trial was insufficient to support the jury's finding he was in imminent danger of becoming a drug addict. Such contention requires a review of the record of the testimony at the trial.

Only three witnesses testified at the trial, all on behalf of the People. Captain Santos of the Brawley Police Department testified he had been on the Brawley Police Department for over 19 years; on June 22, 1968, Elmore was brought to his office by other officers. He examined Elmore to ascertain whether he was using narcotics and to see if he was then under the influence of narcotics. He observed six puncture marks in the fold of appellant's right elbow and four in the fold of his left elbow. The marks were fresh, some fresher than others, but none was very old. He also observed the pupils of appellant's eyes were pinpointed and did not react to light. He formed the opinion appellant was under the influence of a narcotic. On cross-examination, he voiced the opinion that "any person that takes one dose of heroin is in danger of becoming an addict."

Dr. Rangle, the People's second witness, testified he examined appellant on June 28, 1968. He formed the opinion appellant was in imminent danger of becoming a narcotics addict. He gave no reasons for his opinion, but did add he learned from appellant that he [appellant] had two brothers who were drug addicts.

Dr. Royce, the People's last witness, saw and examined appellant on both June 22 and June 28, 1969. On the first occasion, he noticed the pupils of appellant's eyes were constricted, that he spoke in a slow, thick-tongued manner and he appeared dazed. He also examined and noticed the puncture marks on appellant's arms. He concluded appellant was then under the influence of a narcotic drug as distinguished from "speed" or one of the amphetamine drugs. His examination on June 28, 1968, consisted largely of reinspecting appellant's arms. He found appellant no longer under the influence of a narcotic. Based on his examination of Elmore and "what form of a case history or family background you have on Mr. Elmore," he formed the opinion appellant was addicted to the use of narcotics. Dr. Royce did not explain in his testimony "what form of a case history or family background he had on Mr. Elmore." He conceded on cross-examination Elmore's addiction was not of long standing and he had not observed any abstinence syndrome or withdrawal symptoms on either examination.

■ Somewhere in the unhappy sequence, beginning with the experimental and occasional use of narcotic drugs and ending with the disaster of total addiction, lies a point where it may be said the individual involved, by reason of repeated use of such drugs, is in imminent danger of becoming addicted to their use. (*People* v. *Victor,* 62 Cal.2d 280, 304 [42 Cal.Rptr. 199, 398 P.2d 391]; *People* v. *Davis,* 234 Cal. App.2d 847, 853 [44 Cal.Rptr. 825].) It is important that that point be understood by judges and prosecutors, and by expert witnesses who testify in these cases, for it is at that point, and not before, that the power of the state to intervene under the involuntary civil commitment procedure outlined in Welfare and Institutions Code sections 3050 et seq. attaches. (*People* v. *Victor, supra,* 62 Cal.2d 280, 305.)

■ The record before us is a meager one. Certain gaps exist which indicate either appellant had not yet reached the stage in the addictive process where the state is permitted to intervene, or if he had reached that stage, there was a failure to prove it because of a misunderstanding of the requirements.

The requirements to establish the status of a person who "by reason of repeated use of narcotics is in imminent danger of becoming addicted" are laid down in detail in *People* v. *Victor, supra,* 62 Cal.2d 280. Beginning at page 304 of that decision the court said: "To recognize that addiction is more a process than an event is also to clarify the scope of the challenged category of persons 'who by reason of repeated use of narcotics are in imminent danger of becoming addicted.' On the one hand, an individual may not escape an inquiry into his addictive status merely by showing that he is not yet 'hooked' in the strict sense of the word. On the other, to be brought within this category it is not enough that the individual be 'addiction-prone,' or associate with addicts, or even have begun to experiment with drugs; he must have subjected himself to 'repeated use of narcotics.' Defendant's argument that 'repeated use' can theoretically mean as few as twice is unreasonable when the phrase is seen in the context of the whole addiction process, for 'At least several weeks of experience with a drug are usually necessary for the development of an addiction.' [Citations.] Nor is it enough that the individual have thus 'repeatedly used' narcotics, or even be 'accustomed or habituated' to their use, unless such repeated use or habituation has reached the point that he is in imminent danger—in the commonsense meaning of that phrase dis-

cussed above—of becoming emotionally or physically *dependent* on their use.

"        .     .     .     .     .     .     .     .     .     .     .     .

"The legislation does not reach such persons until by repeated *acts* of obtaining, preparing, and ingesting an addictive drug they demonstrate that they have failed to resolve their problems by socially acceptable methods and that total addiction is just a matter of time. When that stage is reached, the state has the right and duty to intervene for the protection of the individual in question and of society at large."

The testimony produced at the trial of this case, at best, goes no further than showing repeated use of narcotics by appellant. Even if we assume the ten recent puncture marks on his arms resulted from narcotics injections, these marks establish only repeated use. No other evidence goes beyond this, except perhaps that two of appellant's brothers were addicts. Neither examining physician testified to any facts which indicated appellant was emotionally or physically dependent upon drugs, nor was it shown in what manner he had failed to solve his problems by "socially acceptable methods." No evidence was given by way of fact or opinion as to the length of time appellant had used narcotic drugs, or as to the approximate age of the fresh or relatively fresh puncture marks on appellant's arms. ▮ To make out a prima facie case, repeated use must at least be coupled with expert testimony "showing why in the case of a particular patient the repeated use is sufficient to create an imminent danger of addiction." (See *People* v. *Davis, supra,* 234 Cal. App.2d 847, 854.) ▮ No such explanation was made.

▮ It is suggested in respondent's brief the doctors probably had more information about appellant from which to form their opinions than is disclosed by the record. That suggestion, however, is cancelled by respondent's concession "that those opinions must be based upon evidence in the record." (*People* v. *Bruce,* 64 Cal.2d 55, 65 [48 Cal.Rptr. 719, 409 P.2d 943].) Secondly, it is maintained that appellant's two criminal convictions can be relied upon as indicating to the medical examiners that appellant was failing to solve his problems in a socially acceptable manner. If this be so, again the record fails to reveal it. Nothing concerning these matters was brought to the attention of the jury. We know that one of these charges was disturbing the peace, but we know nothing about the details. Of the other criminal matters we know nothing at all except that it was a superior court

conviction. It may have been connected with and resulted from the condition appellant was in on June 22d, when he was brought to Captain Santos' office. This we do not know, and this the jury did not know, and nothing in the record indicates the doctors themselves knew about it or relied upon it in forming their respective opinions. We would agree these are matters which should have been properly developed at the trial, but the fact is they were not.

While the two medical witnesses expressed their respective ultimate opinions, one that appellant was newly addicted and the other that he was in imminent danger of becoming addicted, these conclusions may not stand as a basis for the verdict or for the order of commitment where the evidence in the record itself is insufficient to support them. (*People* v. *Bruce, supra,* 64 Cal.2d 55, 65.)

The order of commitment is reversed. Appellant is ordered returned to the Superior Court of Imperial County and to the Justice Court of the Brawley Judicial District for such further proceedings on the criminal charges as are deemed warranted.

Brown (Gerald), P. J., and Coughlin, J., concurred.