[Crim. No. 3722.   Fourth Dist., Div. One.   Oct. 17, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MORRIS CARLEY, Defendant and Appellant.

Work & Lehnhardt and Don R. Work for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward Duddy, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Morris Carley had been convicted of being present in a place where narcotics (marijuana) were being used (Health & Saf. Code, § 11556), apparently based upon marijuana being found in his home.   Criminal

proceedings were suspended and he was certified to the superior court for further proceedings to determine whether he was a narcotic drug addict or in imminent danger of becoming one (Welf. & Inst. Code, § 3050). After medical examinations, report and hearing, the court found Carley was in danger of becoming a narcotic addict. The printed form judgment and commitment order, however, stated only that Carley was a narcotic drug addict within the meaning of section 3050 Welfare and Institutions Code.[1] It contained nothing about his being in imminent danger of becoming a narcotic drug addict through repeated use. The court committed Carley to the California Rehabilitation Center (CRC) for seven years, except as earlier discharge is allowed by law. He appeals from the order of commitment.

Carley was involuntarily committed to the CRC in 1964, rather than serving time on a drunk driving charge. He was discharged in 1965. In December 1966 he requested and was granted commitment to the CRC. In December 1967 he became an out-patient. Positive urine tests from time to time in the next few months, indicating narcotics use, resulted in his being twice returned to CRC. His last release was September 17, 1968. One test for narcotics in September and five in October were negative. No tests were made in November. On November 22, 1968, Carley's parole agent Charles Paschal arrested him for beating his wife; found marijuana in his home; Carley acknowledged using marijuana since September 1968. He had no recent needle marks.

The two medical doctors appointed by the court to examine Carley were Dr. Marvin Royce and Dr. Louis S. Camazine. Together they examined Carley December 26, 1968, and filed a joint report that same day.[2] The report states Carley, now age 28, began using heroin at age 23; Carley said he had last used heroin and marijuana six months ago; he had had three periods of custody at CRC since 1964. There were old marks on his arms. Supplementing his testimony from the report, Dr. Royce testified he found no indication Carley had used heroin since July 1968. The only physical signs of addiction

---

[1] Section 3050 permits commitment for either a narcotic drug addict or one who, through repeated use, is in imminent danger of becoming one.

[2] The form of the report was out of date. It stated the doctors had examined Carley, but erroneously stated they had attended a hearing before a superior court judge, had heard testimony of all witnesses, and then they testified. The procedural requirements were changed in 1967, and appear to have been followed here. (Welf. & Inst. Code, §§ 3050, 3104-3107).

present were areas of old marks near the elbow fold. Carley told him he desired not to use narcotics any more but had used marijuana "to downgrade its importance." Dr. Royce was of the opinion Carley "be either considered a narcotic addict or in imminent danger of becoming so addicted." Dr. Royce analogized Carley's condition to that of a person having arrested tuberculosis: "for the rest of his life he's got to be observed to see that his tuberculosis does not reoccur, and the same thing would be said for the narcotic addict." Frustrations, stresses, pressures, and sharing company with narcotics users would have an effect upon his possible return to narcotics, Dr. Royce said.

Dr. Royce concluded Carley was a narcotic addict "currently not under the influence and that were he to keep company like he had, he would be definitely in imminent danger of becoming so addicted."

Dr. Comazine's testimony was limited to his conclusion Carley was a narcotic addict "not presently on drugs, but he would probably be in imminent danger of addiction for his entire life."

Testifying by deposition in behalf of Carley was Dr. E. K. Distler who concluded Carley was not presently addicted, and not in imminent danger of addiction so long as he kept away from his former associates and had adequate parole supervision. Dr. Distler believed marijuana was not addictive.

▇▇▇▇ Carley's contentions center on whether there is sufficient evidence in the record to support the examiners' opinions and the court's order.

*People* v. *Victor,* 62 Cal.2d 280, 298 [42 Cal.Rptr. 199, 398 P.2d 391], points out there is a clear factual distinction between an addict and one in imminent danger of becoming so addicted.

In the case at bench we have a conglomerate. Paraphrasing, the examining doctors found Carley to be a narcotic addict, currently not under the influence, not presently on drugs, but should certain future events arise, like resorting to his old companions, or should he be subjected to certain frustrations or pressures, he then would probably be in imminent danger of becoming addicted. The court found him to be in imminent danger of becoming an addict, yet held him to be an addict. He was an addict for what he had done in the past, and in imminent danger of becoming an addict for what might conceivably happen to him in the future. Like an alcoholic, once an alcoholic always an alcoholic, even though he may have

abstained from liquor for years, apparently Carley was doomed to being an addict for all time because once addicted.

The issue is: Was Carley at the time the doctors examined him and at the time of the hearing, addicted to the use of narcotics or was he, by reason of repeated use of narcotics, in imminent danger of addiction (Welf. & Inst. Code §§ 3050, 3104, 3106)?

In *People* v. *Bruce,* 64 Cal.2d 55, 61-62 [48 Cal.Rptr. 719, 409 P.2d 943], the court said: "Here, at the summary hearing defendant's counsel laid great emphasis upon the fact that none of the tests conducted by any of the eight doctors who testified were positive, i.e., showed the presence of narcotics in the defendant's system when examined or indicated that he was then undergoing or had at any time undergone the withdrawal symptoms which are indicative of addiction. However, such tests made on or about the time of the commitment are not compelling proof of nonaddiction. In *People* v. *Victor,* 62 Cal.2d 280, 302, 304 [42 Cal.Rptr. 199, 398 P.2d 391], the court recognized that 'addiction is more a process than an event' and that although no single definition of 'addiction' may be satisfactory for all purposes there is general agreement that abuse of an addictive depressant drug, such as heroin, 'will tend to produce in the user the three characteristic mental and physical responses of the addiction process: i.e., emotional dependence, tolerance, and physical dependence.'

"An addict who has been in custody for a period of weeks or months, and who has not had access to narcotics for that period, may be nonetheless a narcotic addict within the meaning of the narcotic laws even though an examination at the time of commitment may show no signs of the withdrawal illness which occurs upon abrupt termination of drug administration. Likewise, laboratory tests, such as by the administration of Nalline, or urinalysis, may be entirely negative and are not of compelling significance.

"Similarly, a person who is permitted to remain on bail pending criminal proceedings against him may be able to abstain from narcotics for a limited period of time under the compulsion of being under surveillance or under threat of confinement and yet be properly classified as an addicted person, or one in imminent danger of becoming addicted to narcotics, if his 'pertinent case history' shows repeated use of narcotics to the extent that he has failed to resolve his prob-

lems by socially accepted methods, that he is emotionally or physically dependent upon their use, and that he has therefore become addicted or that a total addiction is just a matter of time. 'When that stage is reached, the state has the right and duty to intervene for the protection of the individual in question and of society at large.' (*People* v. *Victor, supra,* 62 Cal.2d 280, 305.) ''

The doctors' opinions and conclusions must be premised upon sufficient evidence in the record to support them (*People* v. *Elmore,* 272 Cal.App.2d 864, 869 [77 Cal.Rptr. 721]). An examination of the record and the reasoning expressed by the doctors supporting their opinions, dictates Carley's was a case of arrested addiction, falling short of an existing emotional or physical dependence upon the use of drugs.

Nor do we believe Carley comes within the statutory scope of being, by reason of the repeated use of narcotics, in imminent danger of addiction. *People* v. *Victor, supra,* 62 Cal.2d 280, 304, recently discussed in *People* v. *Elmore, supra,* 272 Cal. App.2d 864, 867, says: ''. . . it is not enough that the individual be 'addiction-prone,' or associate with addicts, or even have begun to experiment wth drugs; he must have subjected himself to 'repeated use of narcotics.' ''

Here neither the doctors' report and testimony, nor the trial court's finding he was in imminent danger of becoming a narcotic drug addict, were premised on the repeated use of narcotics, as required by the statutes, and *Victor.* Instead they dwelt upon prospective contingencies.

We hold the evidence is insufficient to support the commitment. Order reversed for further proceedings on the criminal charge.

Coughlin, J., and Whelan, J., concurred.