Raymond Harrington, J.
The defendant here is charged with violating subdivision 2 of section 1192 of the Vehicle and Traffic Law. The substance of the charge was that the defend *520 ant was operating a motor vehicle ‘ ‘ while his ability to operate such motor vehicle is impaired by the use of a drug as defined in, this chapter ”.
On the trial the People established through a police witness that the defendant was operating his automobile in a very erratic manner, that after his arrest and appropriate warnings having been given, he admitted ‘ ‘ using ’ ’ marijuana and Nembutal. These latter admissions however were not tied down to the defendant’s use on the date of the occurrence.
Shortly after defendant was placed under arrest he consented to the taking and analysis of a urine specimen. A representative of the Scientific Investigation Bureau of the Police Department testified concerning his analysis of the urine.
At the close of the People’s case the defendant moved to dismiss on the grounds that the People had failed to prove a prima facie case.
It was of course necessary for the People to prove that the defendant’s impaired ability to operate his automobile was by reason of his use of drugs. There was absolutely nó evidence or testimony which would bring “ Nembutal ” within any of the definitions of ‘ ‘ drug ’ ’ as contained in section 114-a of the Vehicle and Traffic Law. There was no testimony or evidence that it is a depressant, stimulant, narcotic or hallucinogenic drug, nor any evidence of its chemical properties. To repeat, and not considering for a moment the urinalysis1, the only other evidence concerning drugs is the defendant’s admission that he used marijuana and Nembutal, whatever that might be. However, there is no admission that he used these drugs on the day in question or at what point in time prior to the occurrence which serves as a basis for the. charge. Marijuana is defined as a “ narcotic drug ” in the definition of “ drug ” as set forth in subdivision 3 of section 114-a of the Vehicle and Traffic Law. However, in regard to “ Nembutal ” it is not described by that name anywhere in the definition of ‘ ‘ drug ’ ’, and has not otherwise been described by the People’s witnesses. The admission by defendant that he was “ using ” marijuana, standing alone, is determined by the court as insufficient to sustain a prima facie case on the part of the People.
Turning now to the urinalysis, a Sergeant from the Scientific Investigation Bureau of the Nassau County Police Department appeared and testified that he performed an analysis of the urine specimen taken from the defendant and that the same contained a barbiturate. On cross-examination the following Questions were asked and answers given by the Sergeant:
*521 ‘1 Q Officer, I think you said it revealed barbiturates; is that correct? A Yes.
‘ ‘ Q And by that would you mean a derivative of a barbituric acid? A Yes, sir.
“QDo you know how much of a derivative of barbituric acid there was present in this 100 cc sample ? A I did not perform a qualitative analysis.”
The People argued on the motion to dismiss that “ Nembutal ” was a depressant drug, although the record is barren of any testimony to that effect. There is also no testimony bearing on the question of whether the ‘ ‘ derivative of a barbituric acid ’ ’ was indentifiable as any particular drug. However, assuming arguendo that this court is satisfied that “ Nembutal ” is a depressant drug and that the derivative of barbituric acid found was identifiable as Nembutal, it would he necessary to consider the definition contained in subdivision 1 of section 114-a of the Vehicle and Traffic Law.
That section in part defines “ Depressant drug” as “ any derivative of barbituric acid which has been designated by the commissioner of health as habit forming (Emphasis supplied.) The People properly argue that the court must take judicial notice of the “ Official Compilation of Codes, Rules and Regulations of the State of New York” (CPLR 4511, subd. [a]). In volume 10 thereof, section 81.46, we find a “ Classification ’ ’ of drugs by the Commissioner of Health and a listing titled “ Depressant drug ”. The list does not contain the name “ Nembutal’ ’. More importantly however, in the opinion of the court, is the fact that nowhere does the Commissioner designate such drugs as habit forming. Once again, assuming that “ Nembutal ” is a depressant drug and that the derivative of barbituric acid found in defendant’s urine was identifiable as “ Nembutal ” it would be necessary to dismiss the information for the reason that the Commissioner of Health of New York State has not designated any depressant drugs as habit forming.
It is also interesting to note that the Legislature in the exercise of its police powers and recognizing the drug problems which exist throughout the State also enacted the Depressant and Stimulant Drug Control Act (Public Health Law, art. 33-A), which is a regulatory measure. That law (§ 3371, subd. 1, par. [a]) contains the same definition of depressant drug, in part, namely “ any derivative of barbituric acid which has been designated by the commissioner as habit forming ”. That enactment was in 1965, effective January 1, 1966. The impairment proviso relating to drugs (Vehicle and Traffic Law, § 1192, subd. 2) and the definition of drugs (Vehicle and Traffic Law, *522 § 114-a) were both added in 1966, effective October 1, 1966. Now, some several years later the New York State Commisr sioner of Health still has not made any habit-forming designations as required under the definitions referred to.
The court is therefore of the opinion that wherever enforcement of either of these two statutes is sought and the subject matter is a ‘ 'derivative of barbituric acid”, it is impossible to enforce the same. The Commissioner has thereby frustrated the Governor and Legislature in carrying out a two-pronged attack on an extremely important problem. The motion to dismiss is granted.