William M. Perry, J.
The defendant has been charged with driving- while impaired by the use of drugs, specifically Metha *40 done in violation of subdivision 4 of section 1192 of the Vehicle and Traffic Law of the State of New York.
Subdivision 4 of section 1192 provides that: “No person shall operate a motor vehicle while his ability to operate such a motor vehicle is impaired by the use of a drug as defined in this chapter.”
Section 114-a of the Vehicle and Traffic Law defines drug as including certain depressants, narcotics, and stimulants. Narcotic drugs are defined as any drug which contain quantities of various substances including opiates, or their compound, manufacture, salt, alkaloid or derivative.
Subdivision 21 of section 3302 of the Public Health Law defines “ Narcotic drug ” as including any opiate.
Subdivision 22 defines ‘' Opiate ’ ’ as any substance having an addiction forming or sustaining liability similar to morphine, or a substance capable of being converted into such drug. This section does include those substances specifically designated as controlled under .section 3306. Under schedule II (subd. [b], par. [11]) of that section, Methadone is listed as a controlled substance.
Therefore, a person operating a motor vehicle while his ability to operate such vehicle is impaired by the use of Methadone is, if proven, violating subdivision 4 of .section 1192 of the Vehicle and Traffic Law.
The testimony adduced during the trial showed that the defendant’s vehicle had been involved in an accident with another vehicle at approximately 10 a.m. on the 20th day of June, 1972. The operator of the other vehicle, Thomas Taub, testified that as he was proceeding in a northerly direction on Eoute 110 in the Town of Huntington, the defendant’s car was three or four car lengths in front of him, that the defendant’s vehicle wandered from lane to lane several times, and then moved into a turnoff lane apparently to make a left turn, that the defendant’s vehicle then slowed down, sped up and as Mr. Taub’s car approached the intersection and started to pass the defendant’s vehicle, the defendant’s vehicle veered back into the driving lane striking the Taub car in the left rear. Both vehicles subsequently came to a stop.
Mr. Taub testified that he thought the defendant was intoxicated, further, that the defendant could not walk straight and that he .staggered.
The police officer, who investigated the occurrence, stated that he observed the defendant stumbling, unable to walk *41 straight, that his eyes were bloodshot and somewhat dilated, and glassy, and that his speech was unclear or mumbled.
The defendant told the officer that he was on a Methadone maintenance program. He was then arrested and taken to the local police precinct where he was given certain physical performance tests. The defendant failed to perform certain of the tests and the results of other tests were not conclusive. A chemical analysis of the defendant’s urine revealed a finding of Methadone in his system.
The defendant’s testimony controverted the testimony of Mr. Taub with respect to the operation of his motor vehicle, and he controverted the testimony of the police officer with respect to his ability to perform the tests at the precinct house.
Expert testimony was produced by both sides with respect to the ability of a Methadone user to operate a motor vehicle. In effect, the experts agreed that a person “ stabilized” on a Methadone maintenance program should be permitted to drive. Although the People’s witness qualified this by limiting the privilege to one whose stabilized dosage does not affect his driving ability.
The witness for the defense was of the opinion that the stabilized user of Methadone is not impaired in his ability to operate a motor vehicle absent additional factors.
Both sides .seem to agree that on a stabilized dosage a user may probably be competent to drive. At the same time both agree that the use of Methadone at unstabilized rates or inconsistently could result in physical characteristics like an inability to walk, slurred speech, glassy eyes and also an impairment in driving ability.
The question this court must decide is whether the defendant’s ability was impaired by virtue of the use of Methadone.
There appears to be little precedent in this State, in this area. In People v. Wiley (59 Misc 2d 519), no conviction could be obtained for driving while under the influence of drugs based on proof that the defendant drove in an erratic manner and a urine analysis showing the presence of the barbiturate Nembutal, as well as the defendant’s admission he had used marijuana, where the barbiturate was not proscribed and there was no connection in time between the erratic driving and the use of marijuana. Here, no such obstacle arises; Methadone is on the schedule of proscribed drugs and by the defendant’s own admission he had taken a dosage approximately 24 hours before (the testimony of both experts admits that the effect of Methadone lasts anywhere from 24 to 36 hours).
*42 The other reported ease (People v. Cheperuk, 64 Misc 2d 498) involving a prosecution for a violation of subdivision 4 of section 1192 of the Vehicle and Traffic Law also dealt with a nonproscribed drug, Methaqualone.
It is suggested by the defense that in view of the defendant being a participant in a Methadone maintenance program and that his use of Methadone being condoned, that he may legally operate a motor vehicle.
This argument was raised in the matter of People v. O’Neil (62 Cal. 2d 748, 751). The court there said: “ Surely the person whose faculties are impaired because he is under the influence of . narcotic drugs should not be permitted to drive a car, and it is immaterial whether he obtains such drugs legally or illegally. ’ ’
Of course, the same argument could be used with respect to the use of alcohol which is legally obtainable, but its excess •is proscribed. While it is true that the State of New York with the encouragement of Federal authorities sustains Methadone maintenance programs so as to discourage the use or intake of other narcotic drugs, this by no means grants or gives a license to one partaking in such programs to violate other .statutes.
The defense asserts that there are insufficient facts to find any impairment, and cite People v. Brewster (252 App. Div. 877) and People v. Weaver (188 App. Div. 395). The former case holds only that a conviction cannot be sustained where there was “no credible evidence” of defendant’s intoxication. In Weaver the Appellate Division found that the facts of rapid speed, erratic movement over the road and even an accident are not enough to prove intoxication without more. Here, there was “ credible evidence ” of some impairment in the defendant’s physical characteristics coupled with an abnormal driving pattern and an accident.
The evidence showed that the defendant’s operation of his car was erratic. It also appears that the defendant’s physical appearance was abnormal at the time the accident occurred. The results of the physical performance tests are at least an indication that the defendant was under some disability at the time they were administered. Finally, there was the presence of Methadone in the defendant’s system, and the defendant’s admission that he was on a Methadone maintenance program.
While there is a suggestion or intimation by the defense that the defendant was stabilized as a user of Methadone, there was no specific evidence that the defendant had, in fact, been *43 stabilized, that is to say, that type of individual as described by the expert witness as a person who would be competent to operate a motor vehicle.
The conclusion this court must draw from the “factual” evidence is that the defendant’s operation of his vehicle was impaired and that this impairment was due to the use of Methadone.
Accordingly, I find the defendant guilty of violating subdivision 4 of section 1192 of the Vehicle and Traffic Law by driving a motor vehicle while his ability to do so was impaired by the use of a drug, to wit: Methadone.